# EXHIBIT A

April 29, 2003

BCN 2001, S.L.
Passeig de Gracia, 74
08007, Barcelona, Spain
Attn: Don Javier Faus Santasusana
Administrator

    Re:   <u>Hinsua Barcelona, S.L.</u>

Dear Mr. Faus:

    This letter of intent (this "Letter"), when countersigned, will confirm our understanding for BCN 2001, S.L. ("BCN") or a corporation controlled by BCN (the "Purchaser") to enter into the transaction described below (the "Transaction") with Joel I. Sher, in his capacity as liquidating agent for the bankruptcy estate of G. Ware Travelstead (the "Debtor"), in Case No. 95-5-4979-SD in the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Liquidating Agent"), pursuant to which the Purchaser shall acquire all of the parking spaces owned by Hinsua Barcelona, S.L an organization formed under the laws of Spain, ("Hinsua"). The sole stockholder of Hinsua is Peawick B.V., an organization formed under the laws of the Netherlands ("Peawick"). Debtor is the sole stockholder of Peawick. Hinsua, Peawick, the Debtor and the Liquidating Agent are sometimes collectively referred to as the "Seller." Hinsua is the owner of certain interests and/or government concessions representing 116 parking spaces (basement level 2) situated in a business rental zone in Barcelona, Spain (the "Property"), in accordance with conditions contained in the Real Estate Records Office No. 21 of Barcelona, Spain, as more fully set forth on <u>Exhibit A</u>, attached hereto (the "Concession Agreement").

    This Letter is on the terms, and subject to the conditions, described below. This Letter represents our current, good faith intention to negotiate and enter into a definitive acquisition agreement (the "Agreement"), subject to negotiation of the Agreement in form and substance acceptable to the Liquidating Agent and the Purchaser. This Letter is not, and is not intended to be, a binding agreement between the Purchaser and the Seller, and neither shall have any liability to the other if we fail to execute the Agreement for any reason.

    1.   *Fundamental Terms.* At the effective time of the Transaction (the "Closing"), which Closing shall occur as soon as possible after execution of the Agreement and satisfaction of certain conditions stated therein, Seller will transfer title to the Property to Purchaser. The Purchaser shall pay to the Liquidating Agent at closing a cash purchase price of One Million One Hundred and Sixty Thousand Euros (1.160.000 euros) (the "Property



Purchase Price"). Fifty Eight Thousand euros (58.000) will be deposited in escrow, with a person mutually acceptable to the Liquidating Agent and the Purchaser, as earnest money, at the time of execution of the Agreement. The Closing shall occur within sixty (60) days after receipt of a final order of the Bankruptcy Court, authorizing the Transaction; but no later than July 30, 2003.

2. *Definitive Agreement.* The Liquidating Agent and the Purchaser mutually agree to proceed in good faith toward negotiation and execution of the Agreement which shall provide for the Transaction, incorporating the terms expressed in this Letter and representations, warranties, covenants and other terms typical in contracts of that type.

3. *Stock Option.* The Liquidating Agent and the Purchaser mutually agree to negotiate in good faith the final structure of the transaction so as to attempt to effectuate the conveyances contemplated herein by a transfer of the capital stock (the "Stock") of Hinsua. The Liquidating Agent and the Purchaser shall take into account international and national financial, corporate and tax concerns. The decision as to said structure must maximize the funds which the Liquidating Agent will have available to pay Debtor's creditors (after taking into account the tax liabilities arising from the Transaction). In the event of a transfer of the Stock to Purchaser, the Purchaser shall pay to the Liquidating Agent at Closing a cash purchase price of One Million Eighty Thousand Euros (1.080.000 euros) (the "Stock Purchase Price").

4. *Adjustments* The Property Purchase Price and the Stock Purchase Price are sometimes collectively referred to as the "Purchase Price". The Purchase Price shall be subject to normal adjustments, as are customary in similar transactions.

5. *Conditions.* This Letter is and, to the extent applicable, the Agreement will be, subject to the following conditions:

A. Negotiation and execution of the Agreement with terms, provisions and conditions mutually acceptable to the Liquidating Agent and the Purchaser.

B. Entry of one or more orders of the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Bankruptcy Court"), in Case No. 95-5-4979-SD, authorizing the Liquidating Agent, to take all steps necessary to consummate the Transaction, including, but not limited to, authorizing the Liquidating Agent to direct Peawick or its successors in interest to transfer all of the Stock or cause the transfer of the Property to Purchaser free and clear of all liens, claims or encumbrances.

C. Purchaser's receipt of evidence, satisfactory to Purchaser, that the Liquidating Agent has the authority, on behalf of Peawick, to transfer all of the Stock or the Property to Purchaser.

D. At Closing, (i) repayment of the outstanding loans to Banco de Sabadell (using proceeds from the Purchase Price), which loans are secured by the Property, the aggregate amount of such loans being approximately 127.000 euros as of the date hereof or (ii) a

2



reduction of the Purchase Price in an amount equal to the aggregate amount of such loans as of the date of Closing, as mutually agreed by the Liquidating Agent and the Purchaser.

   E. Upon the Closing, neither the Debtor, Peawick nor the Liquidating Agent, shall have any further obligation with respect to the Concession Agreement or the obligations to Banco de Sabadell discussed above.

   F. Receipt of all necessary consents or approvals for the Transaction.

   G. Appropriate confirmation as to compliance with representations, warranties and covenants at the Closing of the Transaction, as are customary in similar transactions.

  6. *Expenses.* Each party shall bear its own expenses in connection with the implementation of this Letter, regardless of whether or not the definitive Agreement is executed.

  7. *Bankruptcy Court Approval.* As soon as reasonably practical after the execution of this Letter, the Liquidating Agent will file an appropriate motion with the Bankruptcy Court seeking approval of the Transaction.

Sincerely,

*/s/ Joel I. Sher, Leonard A. Cos*
Joel I. Sher, in his capacity as
Liquidating Agent

THE UNDERSIGNED CONFIRMS AND ACCEPTS THE TERMS OF THIS LETTER OF INTENT AS OF THE 30 DAY OF APRIL, 2003.

BCN 2001, S.L.
By: _____
Name: Don Javier Faus Santasusana
Title: Administrator

3