United States Bankruptcy Court
for the District of Maryland
(Northern Division)

|  |  |
|---|---|
| In Re: | ) Bankruptcy No. 96-5-4979-SD |
| G. Ware Travelstead, | ) Chapter 11 |
| Debtor. | ) |

**Response of Creditor Eduardo Canet to Motion of Liquidating Agent for Authority to Sell Interests in or Assets of Hinsua Barcelona, S.L. to BCN 2001, S.L.**

Creditor Eduardo Canet supports the motion of the Liquidating Agent for authority to sell interests in or assets of Hinsua Barcelona, S.L. free and clear of liens, claims and encumbrances, to BCN 2001, S.L.

### The BCN Offer

The BCN offer is the first concrete offer in several years for the assets of Hinsua Barcelona, S.L. Canet had hoped for a higher and better offer; however, since there is no higher or superior offer, Canet supports the sale to BCN with a closing by July 31, 2003.

### The Inadequacy of the Debtor's Last-Minute Offer

The Debtor's last-minute offer of June 16, 2003 should be rejected because: (1) it is less than the BCN offer; and (2) it is designed to, and would, benefit the Debtor, not the estate or the creditors.

## 1. The Debtor's Offer is less than the BCN Offer

On information and belief, the net proceeds of the BCN offer will approximate $900,000. The Debtor's offer is only $550,000 in cash.

The purported other consideration offered by the Debtor is mainly his "assumption" of $200,000 of alleged obligations of the estate for fees, including his counsel's fees. Canet believes that those fees (which have not received final Court approval and have **not** been **paid**) constitute no or little actual consideration and should not be paid or receive final approval because they relate to services which generally did not benefit the estate. For example, the last significant cash infusion into the estate occurred with the sale of Blockless at the end of 1999. Debtor and his counsel did not produce any substantial cash for the estate in the past three and one-half years. Much, if not all, of the fee "obligation" to be assumed is for work in that period. Furthermore, at least some of the counsel's work covered by the "obligation" also duplicated the work of the Liquidating Agent and his law firm.

The impropriety of treating any of those *unpaid* fees as consideration for this sale is highlighted by these facts: (1) the estate's *paid* legal and accounting fees already exceed $3.2 million; (2) the Debtor's share of that total approximates $2.4 million, and (3) the creditors have received only $2.4 million. Given the disproportionate amount of *paid* fees, any *unpaid* fees of the Debtor would have to be reduced substantially, if not rejected in their entirety. A significant portion of past fee payments should also be reviewed and hopefully will be returned to the estate.

Equally baseless is the Debtor's contention that the acceptance of his offer will save the estate $200,000 in expenses. The Debtor's contention ignores the estate's expenses already incurred in the negotiations to date as well as those to be incurred in the future — regardless of the identity of the buyer. Again, the Debtor's contention assumes that all professional fees and expenses will be paid at face value. For the reasons noted above, that assumption is highly questionable and any professional fees and expenses should be reduced substantially.

### 2. The Debtor's Offer Would Benefit the Debtor, not the Estate or the Creditors

The Debtor's offer would transfer to him an asset now worth at least $1.3 million for only $550,000. The Debtor could then sell or use the property as an asset worth twice the purchase price. In other words, he would be able to double the purchase price within days. Since, in all likelihood, much of the Debtor's offer will be financed, his return on his own personal investment would be much greater.

Even assuming arguendo the Debtor's "assumption" of fee obligations, it is apparent that the Debtor and his counsel believe that his offer would not benefit the creditors. In the Supplemental Opposition of Debtor to Cross-Application of Eduardo Canet Fee Distribution to Creditors (para. 11 on p.4), dated January 21, 2003, they have made clear that they believe none of that amount would go to the creditors. They stated therein that the estate would have to have $1 million[1] of new assets before any

---

[1] Under the Debtor's framework, that amount may have to be higher. First, the Debtor's counsel has continued to work on this matter in the last five months and he will undoubtedly seek compensation for that work and increase what the Debtor thinks are legitimate claims against the estate. Second, the Court should not presume that one of the assets in the Debtor's calculation — funds in the tax reserve of approximately $550,000 — will become available to creditors or the

creditor would receive anything. The Debtor's offer would not provide that large a sum — even if you accept Debtor's valuation of the fee "assumption" and the "savings" in expenses at their face value.

In sum, the BCN offer would benefit the estate more than the Debtor's offer. The Debtor's offer would also enrich him unfairly at the expense of the estate and its creditors.

Dated:  June 16, 2003
        New York, New York

                              Pollack & Kaminsky

                by: *[signature: Edward T. McDermott]*

                              Daniel A. Pollack
                              Martin I. Kaminsky
                              Edward T. McDermott

                              114 West 47th Street
                              New York, NY 10036
                              (212) 575-4700

                              Attorneys for Creditor
                              Eduardo Canet

---

estate. Six months ago the IRS stated that the Debtor's 1999 tax liability might exceed $1 million. Canet certainly hopes the IRS is wrong and that all but $50,000 or so will be available and distributed. But, as of now, the IRS has not ruled on the Debtor's position that his tax liability is about $50,000. As of today the Debtor acknowledged that he has not even provided the IRS with a copy of his tax return for 1999 so that a review could occur. Given the uncertainty over the ultimate disposition of the tax reserve, the current assets may be even less than stated by the Debtor and the gap between assets and "expenses" may be even greater than the claims against the estate so that, in the eyes of the Debtor, the amount of new assets needed for a distribution to the creditors would have to be more than $1 million.

United States Bankruptcy Court
for the District of Maryland
(Northern Division)

| | |
|---|---|
| In Re: ) | Case No. 96-5-4979-SD |
| ) | |
| G. Ware Travelstead, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |

### Certificate of Service

I hereby certify that on this 16th day of June, 2003 a copy of the foregoing Response of Creditor Eduardo Canet to Motion of Liquidating Agent for Authority to Sell Interests in or Assets of Hinsua Barcelona, S.L. to BCN 2001, S.L. was sent by fax and Federal Express to:

        Joel I. Sher, Esq., Liquidating Agt
        Shapiro Sher Guinot & Sandler
        36 S. Charles St., Ste. 200
        Baltimore, MD 21201

        Paul M. Nussbaum, Esquire
        Whiteford, Taylor & Preston, LLP
        7 Saint Paul Street, Suite 1400
        Baltimore, MD 21202-1626

*/s/ Edward T. McDermott*
_____
Edward T. McDermott