E. Stephen Derby , U.S. BANKRUPTCY JUDGE                    ✓ RETAIN

PROCEEDING MEMO - CHAPTER 11

Date: 06/17/2003  Time: 10:00

96-54979 G. Ware Travelstead

*Edw. McDermott for Eduardo Canet,*

Cameron J. Macdonald and Stephen F. Fruin representing
G. Ware Travelstead (Debtor)

Karen H. Moore and Tamera L. Fine representing US Trustee
- Baltimore 11 (U.S. Trustee)

PRO SE The Unsecured Creditors' Committee (Creditor Committee)

[1140] Expedited Motion to Compel Liquidating Agent to
Pay Approved Fees of Special Counsel Filed by G. Ware Travelstead.

*Richard Goldberg*

[1141]   Response Filed by Joel I. Sher (related document(s) [1140]).
Motion to Compel filed by Debtor G. Ware Travelstead).
(Attachments: # (1) Certificate of Service # (2) Exhibit
# (3) Exhibit # (4) Proposed Order)

✓ *Javier Fouse*    *1142 is hang?*

PLAN/DISCLOSURE STATEMENT DISPOSITIONS:

Approved_____ Denied Approval_____  Deadline to file Amended D/S_____
Other_____
Confirmed_____  as modified by _____
Denied Confirmation_____ with leave to amend by_____
Other_____

DISPOSITIONS: *1142 (as modified)*

Granted *1147,* Denied____ Withdrawn____ Consent____ Default___ Under Adv. *1140*

Moot_____ Dismissed_____ Relief by Operation of Law (no order req.)_____

Continued to: _____

DECISION: *Approved*

[✓] *Signed* by Court   *1147, 1140 in minipad when P*  [ ] Filed by Counsel
[✓] To be prepared by:
    [✓] Movant's counsel *1142, 1140*   [ ] Court
    [ ] Respondent's counsel            [✓] Other (CSS to scan)

NOTES: D's proposal: No tax consequence to bkrptcy estate from T's offer
D. will not acquire. Estate will decline interest for
550,000. Have received 60K in atty's office. Not a waiver of 200K in fees, but
Rather, $100K allowed not yet paid. After allowance will assure 200K.
Will be $200K more in expenses to close Spanish deal.

Canet Objects to criminal fees.

1142: Approve sale to either at no less than in Exh. 1 or Exh. 2, *thru 7/31/03*
on 4 bus. days notice to others, based on deal that produces best net
realization to estate after tax and expense consequences
pay 1140, Thu to advise when CD matures & may deny as most of int. used to

VS

IN RE: _G. Ware Travelstead_

EXHIBITS

Bankruptcy No. 96-5-4979
Adversary No. _____  Motion No. _____

| EXHIBIT NUMBER | IDENTIFICATION | ADMITTED | DESCRIPTION |
|---|---|---|---|
| 1 | 6-17-03 | 6-17-03 | LTR DTD 6-16-03 |
| 2 | 6-17-03 | 6-17-03 | LTR DTD 4-29-03 |

**EXHIBIT A**

April 29, 2003

BCN 2001, S.L.
Passeig de Gracia, 74
08007, Barcelona, Spain
Attn: Don Javier Faus Santasusana
Administrator

    Re:    <u>Hinsua Barcelona, S.L.</u>

Dear Mr. Faus:

    This letter of intent (this "Letter"), when countersigned, will confirm our understanding for BCN 2001, S.L. ("BCN") or a corporation controlled by BCN (the "Purchaser") to enter into the transaction described below (the "Transaction") with Joel I. Sher, in his capacity as liquidating agent for the bankruptcy estate of G. Ware Travelstead (the "Debtor"), in Case No. 95-5-4979-SD in the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Liquidating Agent"), pursuant to which the Purchaser shall acquire all of the parking spaces owned by Hinsua Barcelona, S.L an organization formed under the laws of Spain, ("Hinsua"). The sole stockholder of Hinsua is Peawick B.V., an organization formed under the laws of the Netherlands ("Peawick"). Debtor is the sole stockholder of Peawick. Hinsua, Peawick, the Debtor and the Liquidating Agent are sometimes collectively referred to as the "Seller." Hinsua is the owner of certain interests and/or government concessions representing 116 parking spaces (basement level 2) situated in a business rental zone in Barcelona, Spain (the "Property"), in accordance with conditions contained in the Real Estate Records Office No. 21 of Barcelona, Spain, as more fully set forth on <u>Exhibit A</u>, attached hereto (the "Concession Agreement").

    This Letter is on the terms, and subject to the conditions, described below. This Letter represents our current, good faith intention to negotiate and enter into a definitive acquisition agreement (the "Agreement"), subject to negotiation of the Agreement in form and substance acceptable to the Liquidating Agent and the Purchaser. This Letter is not, and is not intended to be, a binding agreement between the Purchaser and the Seller, and neither shall have any liability to the other if we fail to execute the Agreement for any reason.

    1.    *Fundamental Terms*. At the effective time of the Transaction (the "Closing"), which Closing shall occur as soon as possible after execution of the Agreement and satisfaction of certain conditions stated therein, Seller will transfer title to the Property to Purchaser. The Purchaser shall pay to the Liquidating Agent at closing a cash purchase price of One Million One Hundred and Sixty Thousand Euros (1.160.000 euros) (the "Property



Purchase Price"). Fifty Eight Thousand euros (58.000) will be deposited in escrow, with a person mutually acceptable to the Liquidating Agent and the Purchaser, as earnest money, at the time of execution of the Agreement. The Closing shall occur within sixty (60) days after receipt of a final order of the Bankruptcy Court, authorizing the Transaction; but no later than July 30, 2003.

2. *Definitive Agreement*. The Liquidating Agent and the Purchaser mutually agree to proceed in good faith toward negotiation and execution of the Agreement which shall provide for the Transaction, incorporating the terms expressed in this Letter and representations, warranties, covenants and other terms typical in contracts of that type.

3. *Stock Option*. The Liquidating Agent and the Purchaser mutually agree to negotiate in good faith the final structure of the transaction so as to attempt to effectuate the conveyances contemplated herein by a transfer of the capital stock (the "Stock") of Hinsua. The Liquidating Agent and the Purchaser shall take into account international and national financial, corporate and tax concerns. The decision as to said structure must maximize the funds which the Liquidating Agent will have available to pay Debtor's creditors (after taking into account the tax liabilities arising from the Transaction). In the event of a transfer of the Stock to Purchaser, the Purchaser shall pay to the Liquidating Agent at Closing a cash purchase price of One Million Eighty Thousand Euros (1.080.000 euros) (the "Stock Purchase Price").

4. *Adjustments* The Property Purchase Price and the Stock Purchase Price are sometimes collectively referred to as the "Purchase Price". The Purchase Price shall be subject to normal adjustments, as are customary in similar transactions.

5. *Conditions*. This Letter is and, to the extent applicable, the Agreement will be, subject to the following conditions:

A. Negotiation and execution of the Agreement with terms, provisions and conditions mutually acceptable to the Liquidating Agent and the Purchaser.

B. Entry of one or more orders of the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Bankruptcy Court"), in Case No. 95-5-4979-SD, authorizing the Liquidating Agent, to take all steps necessary to consummate the Transaction, including, but not limited to, authorizing the Liquidating Agent to direct Peawick or its successors in interest to transfer all of the Stock or cause the transfer of the Property to Purchaser free and clear of all liens, claims or encumbrances.

C. Purchaser's receipt of evidence, satisfactory to Purchaser, that the Liquidating Agent has the authority, on behalf of Peawick, to transfer all of the Stock or the Property to Purchaser.

D. At Closing, (I) repayment of the outstanding loans to Banco de Sabadell (using proceeds from the Purchase Price), which loans are secured by the Property, the aggregate amount of such loans being approximately 127.000 euros as of the date hereof or (ii) a

2



reduction of the Purchase Price in an amount equal to the aggregate amount of such loans as of the date of Closing, as mutually agreed by the Liquidating Agent and the Purchaser.

E. Upon the Closing, neither the Debtor, Peawick nor the Liquidating Agent, shall have any further obligation with respect to the Concession Agreement or the obligations to Banco de Sabadell discussed above.

F. Receipt of all necessary consents or approvals for the Transaction.

G. Appropriate confirmation as to compliance with representations, warranties and covenants at the Closing of the Transaction, as are customary in similar transactions.

6. *Expenses.* Each party shall bear its own expenses in connection with the implementation of this Letter, regardless of whether or not the definitive Agreement is executed.

7. *Bankruptcy Court Approval.* As soon as reasonably practical after the execution of this Letter, the Liquidating Agent will file an appropriate motion with the Bankruptcy Court seeking approval of the Transaction.

Sincerely,

/s/ Joel I. Sher, Liquidating Agent
Joel I. Sher, in his capacity as
Liquidating Agent


THE UNDERSIGNED CONFIRMS AND ACCEPTS THE TERMS OF THIS LETTER OF INTENT AS OF THE 30 DAY OF April, 2003.

BCN 2001, S.L.
By: _____
Name: Don Javier Faus Santasusana
Title: Administrator

3

## WHITEFORD, TAYLOR & PRESTON
L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626

410 347-8700
FAX 410 625-7510
www.wtplaw.com

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573

1317 KING STREET
ALEXANDRIA, VIRGINIA 22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

PAUL M. NUSSBAUM
DIRECT NUMBER
410 547-8794
pnussbaum@wtplaw.com

June 16, 2003

***Via Hand Delivery***

Joel I. Sher, Esquire
Shapiro Sher Guinot & Sandler
20 South Charles Street, 20th Floor
Baltimore, Maryland 21201

    Re: **G. Ware Travelstead**
       **Case No. 96-5-4979-SD**
       <u>**Chapter 11**</u>

Dear Joel:

  Further to our negotiations in accordance with the Motion of Liquidating Agent for Authority to Sell Interests in or Assets of Hinsua Barcelona, S. L., Free and Clear of Liens, Claims and Encumbrances, which was filed with the Bankruptcy Court on May 7, 2003 (the "Motion"), please accept this letter as a higher and better offer from Mr. Travelstead for all of the estate's interests in the Hinsua Spaces[1]. As you will see from the terms of the offer described herein below, Mr. Travelstead will provide to the estate $300,000 more for the Hinsua Spaces than what would be realized from the transactions contemplated under the BCN Letter of Intent.

  In consideration of entry by the Bankruptcy Court of an order authorizing the relinquishment by the Liquidating Agent on behalf of the estate of any and all rights and interests held directly and indirectly in the Hinsua Spaces:

    1 - Mr. Travelstead will remit to the Liquidating Agent cash in the amount of $550,000;

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Joel Sher
June 16, 2003
Page 2

2 – Upon acceptance of this offer by the Liquidating Agent with the approval of the Bankruptcy Court, Mr. Travelstead will remit to the Liquidating Agent an escrow deposit in the amount of $60,000[1];

3 – Mr. Travelstead will assume responsibility for the payment of certain allowed and unpaid administrative claims in the amount of $200,000, and he will obtain for the estate releases of such claims from the holders thereof;

4 – The estate will not be required to pay any foreign or U.S. taxes in respect of the transaction contemplated by this offer;

5 – The estate will be relieved from paying $200,000 of future administrative claims for professional fees and expenses which will be incurred by the estate to consummate the transactions contemplated under the BCN Letter of Intent; and

6 - Closing for this transaction will occur on or before July 15, 2003.

As you can see, Mr. Travelstead's offer is, from both an economic and transactional perspective, higher and better than the sale contemplated under the BCN Letter of Intent. In this regard, please let me explain for your consideration why, in addition to the cash payment of $550,000, the components of Mr. Travelstead's offer greatly increase payments to existing creditors from the disposition of the Hinsua Spaces.

First, as set forth in item 5 of Mr. Travelstead's offer, the Liquidating Agent will minimize, if not eliminate substantial additional administrative priority claims from the professional fees and out-of-pocket expenses to be incurred and paid by the estate for a transaction with BCN under the Letter of Intent. These fees and expenses would arise from the services to be rendered by your firm as principal counsel for the Liquidating Agent, the services of your tax and transactional attorneys and other agents in Spain, the services of your tax and transactional attorneys and other agents in the Netherlands, and for the services of estate's accountants and tax advisors in the United States. More specifically, during our recent discussion on this issue, I believe we agreed the likely professional fees and expenses to complete a transaction with BCN could be as much as $200,000. Consequently, the net cash for payment to existing creditors generated from the sale of the Hinsua Spaces to BCN will actually be $200,000 less than the amount received, because the additional administrative claims to be paid will share in distributions. Under Mr. Travelstead's proposal, no such additional administrative claims will occur and his payment of $550,000 will be available to pay existing claims.

---

[1] In accordance with your request that the deposit be verified prior to submission of this proposal, this will also confirm that on Friday, June 13, 2003 Mr. Travelstead wired into my firm's escrow account the sum of 52,000 Euros, or approximately $64,300.

Joel Sher
June 16, 2003
Page 3

Additionally, based upon the disclosures in the Motion and the additional data you have provided, as a result of tax liabilities in Spain and the United States related to the transactions contemplated under the BCN Letter of Intent, a sale of the Hinsua Spaces to BCN will only generate net proceeds of approximately $650,000 (more accurately only $450,000, due to the additional professional fees and expenses discussed above). Importantly, this estimated recovery may be significantly over stated because it is unknown whether, and if so to what extent, the Spanish taxing authorities will permit Hinsua to take a tax deduction for the professional fees and expenses which will not be paid by Hinsua but rather by the bankruptcy estate in respect of fee applications herein. Conversely, under Mr. Travelstead's proposal, as stated in item 4 of his offer, the estate will not incur taxes, and the cash received by the estate from Mr. Travelstead will not be subject to a contingency for subsequent taxing authority claims.

Furthermore, Mr. Travelstead's proposal greatly improves upon the amount to be paid to creditors through the reduction of administrative priority claims entitled to participate in future distributions. Simply put, Mr. Travelstead has requested and received an accommodation from his counsel and others that, in lieu of payment from the estate on allowed administrative fee claims in the amount of $200,000, the estate will be released from having to pay these administrative claims and the obligation for same will assumed by Mr. Travelstead. In this regard, please note that the administrative claims in question will not be for fees which might be challenged or disallowed for payment from the estate. Rather, the administrative fee claims to be assumed by Mr. Travelstead would be "allowed" fees from court approved fee applications in this case. Accordingly, this provision of Mr. Travelstead's offer provides an absolute increase in the amount to be paid to creditors of the estate by an additional $200,000.

In conclusion, when you compare Mr. Travelstead's proposal to the anticipated recoveries under the BCN Letter of Intent, Mr. Travelstead's is genuinely higher and better. In fact, Mr. Travelstead's proposal will provide in excess of $300,000 more to the estate than the transactions contemplated under the BCN Letter of Intent.

Please confirm to me at your earliest opportunity your acceptance of this proposal as a higher and better offer and that you will seek Court approval of same at the hearing to consider this matter on June 17, 2003.

Very truly yours,

Paul M. Nussbaum

cc:   G. Ware Travelstead
      Kenneth Oestreicher, Esquire
      Stephen F. Fruin, Esquire

1494921