UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: G. WARE TRAVELSTEAD,
                               *Debtor.*

PATRICK J.B. DONNELLY; ROLAND E. BENNER,
      *Parties in Interest-Appellants,*

v.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, of G. Ware Travelstead,
      *Party in Interest-Appellee,*

G. WARE TRAVELSTEAD,
                       *Debtor-Appellee,*

v.

EDUARDO CANET,
      *Creditor & Party in Interest-Appellee,*

and

JOEL I. SHER,
                    *Party in Interest.*

No. 00-1115

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-99-1951-CCB, BK-96-54979-SD)

Argued: January 24, 2001

Decided: August 12, 2003

Before WIDENER, WILKINSON, and WILLIAMS, Circuit Judges.

Dkt. re P.923, 926

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Charles Kevin Kobbe, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellants. Kenneth Oestreicher, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Richard M. Kremen, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellants. Paul M. Nussbaum, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellee Travelstead; Benjamin Rosenberg, Lawrence J. Yumkas, ROSENBERG, PROUTT, FUNK & GREENBERG, L.L.P., Baltimore, Maryland, for Appellee Committee; Daniel A. Pollack, Martin I. Kaminsky, Edward T. McDermott, POLLOCK & KAMINSKY, New York, New York, for Appellee Canet.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Patrick J.B. Donnelly and Roland E. Benner appeal from the district court's order affirming the bankruptcy court's division of proceeds following the sale of stock from G. Ware Travelstead's personal estate in bankruptcy. This case requires us to interpret the language of Travelstead's confirmed Chapter 11 bankruptcy plan. The bankruptcy plan included a provision for the sale of 32 shares of stock owned by Travelstead, stock encumbered by his pledge of it as collateral for a loan. Under the bankruptcy plan, the claim secured by the stock was an allowed secured claim. Appellants Donnelly and Benner also owned a 32.8125% interest in these 32 encumbered shares, an interest recognized under the bankruptcy plan. The question before us

is whether, subsequent to the sale of these shares, Donnelly and Benner should recover 32.8125% of the total consideration paid for the debtor's stock or that same percentage of the funds remaining after full payment of the claim secured by the stock. Because the unambiguous terms of the plan require that funds generated by the sale of the debtor's stock be applied to satisfy the secured claim before Donnelly and Benner's 32.8125% could be calculated, we affirm.

I.

Travelstead owned 32 shares of stock (Shares) in a Dutch company, Blockless Investments (Blockless), which owned mortgages secured by real estate in Australia. The Shares constituted an 80% voting interest in Blockless. Donnelly paid Travelstead $150,000 in January of 1995 and was to receive a 15% interest in Blockless, or six of Travelstead's Shares. Benner paid Travelstead $933,000 in February of 1995 and was to receive an 11.25% interest in Blockless, or 4.5 of Travelstead's Shares. Together, Donnelly and Benner were to have acquired 10.5 shares of stock, which was 32.8125% of Travelstead's interest. Travelstead, however, never delivered any shares to Donnelly or Benner or had the transfer of the shares sold to them recorded in the records of Blockless.

In December of 1995, after he had been paid by Donnelly and Benner, Travelstead borrowed approximately $5 million in Australian Dollars from Blockless, and he secured the loan by pledging all of the Shares, including the 10.5 shares Donnelly and Benner had paid for, as collateral. Travelstead made this pledge without the knowledge of Donnelly and Benner, and the deed of pledge by Travelstead asserted that no one other than Travelstead possessed any interest in the Shares or was entitled to demand such an interest. Donnelly and Benner concede that Travelstead's pledge encumbered all of the Shares.

II.

In May of 1996, Travelstead filed a voluntary petition for Chapter 11 bankruptcy. Both Donnelly and Benner filed proofs of claim on October 8, 1996, claiming the value of the above-described shares of stock for which they had paid Travelstead. In December of 1997, the bankruptcy court entered an order confirming Travelstead's plan of

reorganization (the Plan). The Plan treated Blockless as the Class 2 secured creditor, and provided that within two years of its effective date, the Shares were to be sold by a liquidating agent and the proceeds used to pay Blockless the allowed amount of its secured claim. Further, the Plan provided that Blockless's secured claim had to be paid in full before the proceeds of the sale of the Shares could be used for any other purpose. Section 3.2 of the Plan, for example, reads in pertinent part as follows:

> In the event of a sale or refinancing of the collateral securing said Class 2 Claim, the proceeds shall be used to pay the indebtedness to the holder of the Class 2 Claim before said proceeds can be used for any other purpose.

(J.A. at 403.) Identical language is used in § 4.1 of the Plan, which provides the "Manner of Distributions to Holders of Claims and Interests." (J.A. at 406.)

Another of the Plan's provisions required Travelstead to confirm in Blockless's records the stock interests of Donnelly and Benner—as soon as practicable and subject to pre-existing encumbrances.[1] Travelstead, while operating the estate as a debtor in possession, never took action to confirm Donnelly and Benner's interests.

In June of 1998, Donnelly and Benner agreed to dismiss their proofs of claim and stipulated that the Plan's terms governed their rights to the distribution of the proceeds of the Shares. The bankruptcy court entered the two stipulated orders on June 30, 1998.

---

[1] In pertinent part, Section 5.5(a) of the Plan provides that:

> *Subject to pre-existing encumbrances*, if any, as soon as practicable after the Effective Date, the Debtor shall commence to take, or cause to be taken, such action as is necessary to confirm that Patrick J.B. Donnelly ("Donnelly") and Roland E. Benner ("Benner") own 15% and 11.25% respectively of the stock interest in Blockless and the Debtor will execute, or cause to be executed, issued, and/or delivered such documentation as is necessary to confirm the same.

(J.A. at 411 (emphasis added).)

In October of 1998, the liquidating agent appointed under the Plan executed a letter of intent providing for the sale of the Shares to Gibson Investments (Gibson), a third party. In exchange for the Shares, Gibson agreed to pay $6.5 million in cash and to assume Travelstead's obligation to Blockless. Donnelly and Benner argue that the total consideration paid for the Shares by Gibson was therefore $12.14 million: $6.5 million in cash and $5.64 million in the assumed obligation of Travelstead.[2] On October 27, 1998, the liquidating agent filed a motion to sell the Shares to Gibson free and clear of liens, claims, and encumbrances. A dispute ensued, however, about how much money should be distributed to Donnelly and Benner. Donnelly and Benner argued, as they do on appeal, that they were entitled to 32.8125% of the $12.14 million total consideration Gibson paid for the Shares, or $3.98 million. Travelstead and various unsecured creditors objected, arguing that Donnelly and Benner were owed only 32.8125% of the $6.5 million in cash to be paid by Gibson, or $2.1 million.

The bankruptcy court held a hearing on the matter on December 14, 1998. At the time of the hearing, there was no objection to the propriety of the sale, and the parties disagreed only over the correct distribution of the proceeds. Thus, the parties withdrew any objection to the sale itself and, instead, sought to resolve the distribution issue, after the sale, at a May 10, 1999 hearing before the bankruptcy court. All parties agreed that the dispute was governed by the terms of Travelstead's confirmed Plan.

In May of 1999, the bankruptcy court entered an order allowing Donnelly and Benner the lesser amount, 32.8125% of the $6.5 million cash portion of the consideration from sale of the Shares. In ordering distribution of the lesser amount, the bankruptcy court found that, pursuant to the unambiguous language of §§ 3.2 and 4.1 of the Plan,

---

[2]We note that the loans from Blockless to Travelstead were made in Australian dollars, a circumstance not discussed by Donnelly and Benner in their explanation of what they believe to be owed them. Because whether the sums involved in this case, including the cash Gibson paid for the Shares and the obligations Gibson assumed, are to be calculated in Australian or U.S. dollars does not affect our decision, we will assume for ease of discussion that all are correctly calculated in U.S. dollars.

"Blockless is to be paid before the Donnelly-Benner percentage is applied to determine their distribution." (J.A. at 819.) Furthermore, the bankruptcy court ruled that, under the doctrine of unjust enrichment, the distribution to Donnelly and Benner should be surcharged with 17.5673% of the liquidating agent's fees and expenses incurred in the sale of the Shares.

On June 7, 1999, Donnelly and Benner filed their notice of appeal with the District Court of Maryland, seeking review of the bankruptcy court's distribution order, and on December 22, 1999, the district court affirmed the bankruptcy court's order. On January 21, 2000, Donnelly and Benner timely filed their notice of appeal seeking review in this court of the district court's decision affirming the bankruptcy court's distribution order. We have jurisdiction under 28 U.S.C.A. § 158. On appeal, Donnelly and Benner challenge the bankruptcy court's division of the proceeds from the sale of the Shares. They argue that the bankruptcy court erred by determining their proceeds from the sale of the Shares without reference to the total amount of consideration given for the Shares. They also challenge the bankruptcy court's assessment of a surcharge against their shares of the proceeds. Because we agree that the bankruptcy court correctly calculated the amount of distribution to which Donnelly and Benner were entitled, we affirm.

### III.

"Because in this case the district court sat as an appellate court in bankruptcy, our review of the district court's decision is plenary. We review the bankruptcy court's factual findings for clear error, while we review questions of law de novo." *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K&L Lakeland, Inc.)*, 128 F.3d 203, 206 (4th Cir. 1997) (internal citations and emphasis omitted). It has been long established that the terms of a written contract, if they are unambiguous, must be given effect, notwithstanding hardship. *New England Mut. Life Ins. Co. v. Hurst*, 199 A. 822, 826 (Md. 1938). The question of whether a plan of reorganization is ambiguous or unambiguous is a question of law. Donnelly and Benner's central argument on appeal essentially is that the bankruptcy court erred by selling their shares to satisfy Travelstead's debts.[3] They argue that proceeds from

---

[3] As noted above, the liquidating agent sold the Shares to Gibson for $6.5 million in cash and assumption of Travelstead's $5.64 million obligation to Blockless.

the sale of the 10.5 shares they "owned" were not necessary to satisfy Travelstead's obligation to Blockless. Instead, they argue, the proceeds from the 21.5 shares Travelstead owned after he "sold" 10.5 of his 32 Shares were more than sufficient to satisfy Blockless's secured claim.

The question before us, however, is not whether it would have been possible and more equitable for the proceeds of the sale of the Shares to satisfy Blockless's secured claim without recourse to the $3.98 million generated by the sale of the 10.5 shares in which Donnelly and Benner had an interest. Instead, the question is whether the bankruptcy court correctly interpreted the terms of the Plan when it ordered the lesser amount be distributed to Donnelly and Benner. *See* 11 U.S.C.A. § 1141(a) (West 1993) ("[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . ."); *see also First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1317 (4th Cir. 1996) ("Under the Bankruptcy Code, a confirmed plan of reorganization acts like a contract that is binding on all of the parties, debtor and creditors alike."). Indeed, a bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect. *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir. 1993).

We conclude that the relevant terms of the Plan, found in §§ 3.2 and 4.1, are unambiguous and controlling:

> In the event of a sale or refinancing of the collateral securing [the] Class 2 Claim, the proceeds shall be used to pay the indebtedness to the holder of the Class 2 Claim *before said proceeds can be used for any other purpose.*

(J.A. at 403 (emphasis added).) It is undisputed that all of the 32 Shares were encumbered by Travelstead's pledge and that all of the Shares constituted the collateral securing Blockless's claim. Furthermore, Donnelly and Benner do not argue that they were denied notice or the opportunity to be heard before the plan was confirmed and a liquidating agent was appointed to negotiate the sale of the Shares.

Donnelly and Benner point to § IV.B.2 of the Disclosure Statement to argue that the loan was intended to be repaid without inclusion of

their interests in the Shares.[4] To the extent that the Disclosure Statement diverges from the terms of the Plan, the terms of the Plan control, insofar as we have found those terms unambiguous. *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1153 (D.C. Cir. 1986) (noting that "case law indicates that where a conflict exists with the disclosure statement, the language of the plan should control"). Moreover, the Disclosure Statement, like the Plan, does not differentiate between Travelstead's portion of the Shares and those of Donnelly and Benner. As the bankruptcy court noted, the phrase "secured by a pledge of Mr. Travelstead's stock in Blockless" referred to the 80% interest, "not to a lesser percentage of the 80 percent" claimed by Donnelly and Benner. (J.A. at 823.)

Additionally, we should be clear about what it was that Donnelly and Benner owned. They did not own any shares of Blockless. Donnelly and Benner allowed themselves to pay Travelstead for the 10.5 shares without ensuring that the shares were delivered to them or that the transfer was recorded on the books of Blockless. Donnelly and Benner then suffered the misfortune of having Travelstead not only fail to complete the sale of the stock, but pledge all of the Shares as security for two loans from Blockless. As the bankruptcy court observed, what Donnelly and Benner owned, then, was 32.8125% of Travelstead's stock interest in Blockless, which was encumbered.

---

[4]Section IV.B.2 states in part,

> *Class 2 Claim* shall consist of the Allowed Amount of the Secured Claim of Blockless, which claim is secured by a pledge of Mr. Travelstead's stock in Blockless. In full and complete satisfaction, discharge and release of the Class 2 Claim, unless otherwise agreed to by the holder of the Class 2 Claim and the Debtor, within two (2) years after the Effective Date, the holder of the Class 2 Claim shall be paid the Allowed Amount of its Class 2 Secured Claim in cash from the Debtor's share of the proceeds of the sale and/or refinancing of the collateral securing the Class 2 Claim, from distributions resulting from the sale of assets in which Blockless has an interest or from any other source of funds available to the Debtor.

(J.A. at 112.)

Therefore, under the plain terms of the Plan, because all of the Shares were subject to Travelstead's pledge, they were all sold to pay off the encumbrance. Only after the Blockless indebtedness was paid could the "proceeds . . . be used for any other purpose." (J.A. at 403 (quoting §§ 3.2 and 4.1 of the Plan).) Calculating the amount yielded by Donnelly and Benner's 32.8125% interest was clearly an "other purpose," and thus, under §§ 3.2 and 4.1 of the Plan, the Blockless indebtedness was properly paid before this calculation. The bankruptcy court thus did not err by applying Donnelly and Benner's 32.8125% interest to the $6.5 million that constituted the net proceeds after satisfaction of the pledge.

Donnelly and Benner also argue that it is unfair for a portion of the proceeds generated by the sale of the shares they attempted to purchase to be used to help pay off Travelstead's obligation to Blockless. If this outcome is inequitable, it stems not from any error of the bankruptcy court but from Travelstead's failure to complete the transactions with Donnelly and Benner and from his pledge of the Shares while falsely representing that no other individual possessed an interest in the Shares.

Donnelly and Benner are receiving everything to which they are entitled under the Plan. We note that Donnelly and Benner had initially filed claims against Travelstead for the value of the stock, claims that would have left them unsecured creditors. Both Donnelly and Benner later stipulated that the claims should be deemed withdrawn because they were provided for in the Plan, and their claims were withdrawn. Therefore, we agree with the bankruptcy court's conclusion that the pair traded a claim against Travelstead for the value of the stock for an express recognition of their stock ownership interest in the plan, albeit an interest subject to a prior pledge.

IV.

Donnelly and Benner also appeal the bankruptcy court's order that they pay a portion of the expenses and fees incurred by the liquidating agent in selling the Shares. The only ground on which Donnelly and Benner object to this order is their argument that they received no benefit from the sale. Travelstead points out that the pair indeed received benefit because Blockless, under the terms of the Plan, was

entitled to foreclose on the Shares were they not sold within two years of the Plan's effective date, in which case Donnelly and Benner would not have received nearly the amount from their derivative interest as they did from the sale of the Shares to a third party. We conclude that ordering Donnelly and Benner be assessed a share of the liquidating agent's expenses and fees was within the power of the bankruptcy court under 11 U.S.C.A. § 105(a) (West 1993).

## V.

Under the unambiguous terms of the Plan, Donnelly and Benner's interests in the Shares were subject to an encumbrance. Thus, as the district court held, the bankruptcy court correctly awarded them a distribution of the proceeds of the stock minus the value of the encumbrance. Additionally, because they benefitted from the sale of the Shares, it was within the power of the bankruptcy court to surcharge their shares of the proceeds with expenses arising from the sale of the Shares.

*AFFIRMED*