United States Bankruptcy Court
for the District of Maryland
(Northern Division)

|  |  |
|---|---|
| In Re: | ) Bankruptcy No. 96-5-4979-SD |
|  | ) |
| G. Ware Travelstead, | ) Chapter 11 |
|  | ) |
| Debtor. | ) |
|  | ) |

**Objection of Creditor Eduardo Canet
to Third Application of
Shapiro Sher Guinot & Sandler and Liquidating Agent
for Interim Allowance of
Compensation and Reimbursement of Expenses**

**Overview**

Eduardo Canet, an unsecured creditor of G. Ware Travelstead
(the "Debtor"), submits this objection to the Third Application of
Shapiro Sher Guinot & Sandler and Liquidating Agent ("Shapiro
Sher") for $656,532.10, the single largest fee request yet in this
bankruptcy.

Canet respectfully submits that the Court should defer ruling
on the Third Application of Shapiro Sher.  Key information about
the estate's assets and claims against them is lacking for a

1

decision on the Shapiro Sher application.  The exact amount of available assets in the estate is unclear.[1]  For example, over $550,000 has been in escrow for several years to meet tax obligations of the debtor.  To date, there is no firm, concrete information about how much of those funds will be available for the estate (or the IRS).[2]  Without that information, it is not clear that the estate even has enough money to pay the requested amount.

Moreover, Whiteford Taylor & Preston ("Whiteford Taylor"), counsel for the Debtor, has indicated it will seek several hundred thousands of additional fees for time covered by the Shapiro Sher application (see Supplemental Opposition of Debtor to Cross-Application of Eduardo Canet for Distribution to Creditors in January, 2003).  The absence of that application further renders a ruling on the Shapiro Sher application premature at this time.  A grant of that fee request could deplete the assets of the estate.  Further, the contents of any Whiteford Taylor application are likely to provide information on the extensive duplication of services by Shapiro Sher and Whiteford Taylor in this application's

---

[1] On December 11, 2003 Canet asked the Liquidating Agent for such information (Exh. A).  No response has been received.

[2] Recently, counsel for the debtor advised Canet (in response to his inquiry) that it has still not resolved a year-old problem with the IRS over those funds (Exh. B).

2

time period.  The law firms' duplication of services in the Xpres

litigation (pp. 8-9, infra) provides reason to believe that they

did so in other matters covered by the Third Application of Shapiro

Sher.


However, if the Court should nevertheless decide to rule now

on the Shapiro Sher application, it should reject much of that fee

application because:  (1) the requested amount would eliminate any

benefit received by the estate for the relevant services (the Xpres

litigation), (2) the services for which fees are requested did not

produce a single dollar for the estate (the Spanish assets other

than Hinsua), and (3) many of the services are not compensable

(Hinsua) (see pp. 6-15, infra).


## Governing Legal Principles

Before compensation will be awarded out of the bankruptcy

estate [under § 330(a) of the Bankruptcy Act, 11 U.S.C. 330(a)],

the applicant must establish:  (1) that the services rendered were

"actual and necessary;"  (2) that the services were either

economically beneficial to the estate or benefited the

administration of the estate; and (3) that the fees charged are

reasonable.  In re Breeden, 180 B.R. 802, 812 (Bcy. N.D. W.Va.

1995) (cases listed therein).  The applicant is not entitled to a

3

fee and expenses unless it satisfies that test in its fee request.
In re Leonard Jed Co., 103 B.R. 706, 711 (Bcy. D.Md. 1989).  As the
court noted in In re Morgan, 48 B.R. 613, 617 (Bcy. D.Md. 1985),
"the setting of fees is a matter of grave concern to the court."
Indeed, "the bankruptcy court has a <u>duty</u> to review fee
applications, notwithstanding the absence of objections."  In re
Courtois, 222 B.R. 491, 494 (Bcy. D.Md. 1998).  This Court has
recognized that, in fulfilling that duty, it has an "inherent power
and an obligation to limit attorneys' fees to a reasonable amount."
In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327, 341 (Bcy.
D.Md. 2000) [quoting In re A.H. Robins Co., Inc., 86 F.3d 364, 373
(4th Cir. 1996)] (Derby, J.).


Though the Court's review of the fee application takes place
within the "lodestar" framework set forth in Barber v. Kimbrell's
Inc., 577 F.2d 216, 226 (4th Cir. 1978), the courts have adopted
several more focused precepts within that "lodestar" framework:


1.   the primary criterion for justifying a fee is the result
     achieved for the estate.  In re Stern Office Furniture,
     Inc., 1994 U.S. Dist. LEXIS 5048, at **8-9 (D.Md. 1994);
     In re Grimm, 156 B.R. 958, 961 (Bcy. E.D.Va. 1993)
     ("benefit to the estate is a prerequisite for an award of

4

fees and expenses under § 330(a)"); In re Lilliston, 127 B.R. 119, 121 (Bcy. D.Md. 1991) (Derby, J.); In re Great Sweats, Inc., 113 B.R. 240, 240-41 (Bcy. E.D.Va. 1990);

2.  duplication of services is to be avoided. In re National Quick Print, Inc., 103 B.R. 107, 110 (Bcy. D.Md. 1989) (Derby, J.) (court will not compensate unnecessary duplication of services by two law firms providing services for debtor); In re Bernard Hill, Inc., 133 B.R. 61, 71-72 (Bcy. D.Md. 1991); In re Leonard Jed Co., supra, 103 B.R. at 713 ("Time spent by partners and associates in conferences and meetings is compensable but not by more than one participant");

3.  various expenses (e.g. postage, telephone, telecopy, messenger services) are not to be reimbursed. In re National Quick Print, Inc., supra, 103 B.R. at 111 (no reimbursement for postage, messenger services, faxes and telephone calls since they represent overhead expenses); In re Leonard Jed Co., supra, 103 B.R. at 711-12 (same); In re Garrison Liquors, Inc., 108 B.R. 561, 565 (Bcy. D.Md. 1989) (same);

5

4.    the applicant is to apply "billing judgment" — e.g. it is not to seek a fee for services regardless of the outcome actually produced by the service; In re Great Sweats, Inc., supra, 113 B.R. at 243; In re Leonard Jed Co., supra, 103 B.R. at 713-14; and

5.    the estate is not to pay for services which benefit the debtor, but not the estate.  See, e.g. In re Lilliston, supra, 127 B.R. at 121.

### Shapiro Sher's Administration of the Assets of the Estate[3]

### I.    The Xpres Litigation of 2000-01

None of the $65,581 request for fees and expenses should be allowed to Shapiro Sher in connection with the Xpres litigation of 2000-01.  An award to Shapiro Sher would leave the estate with no benefit whatever from that action.   That litigation, a doomed effort to thwart a sale of Xpres Corporation, produced a small gross benefit to the estate in 2001 — only $80,000 (Third Applic.

---

[3] Shapiro Sher's application also seeks to charge the estate almost $4000 for unreimbursable expenses for its general estate administration:   postage ($60.50), messenger service and express mail ($684.49), telecopies ($2073.), Federal Express and UPS ($197.47) and phone calls ($1130.18).   Canet lacks information sufficient to determine whether the fee requested for general estate administration services is appropriate.   But, it is clear that those expenses should not be reimbursed.

¶ 47). To date, the Court has already given interim approval of $75,000 of costs associated with that litigation:

> (1) $33,631.79 of attorneys' fees, etc. for Carruthers & Roth, P.A., the local North Caroline counsel in that action;
>
> (2) $5,640 of fees, etc. for Whiteford Taylor[4]; and
>
> (3) $35,891.59 of fees, etc. for the Debtor's expert (Penta Advisory Services).

Thus, as of today, the estate already paid more than fifteen times its net benefit ($5,000) to professionals. One of those professional organizations — Whiteford Taylor — has requested another $47,755 and has indicated an interest in repeating that request. Since an advance of virtually any of the Shapiro Sher application for $65,581 would eliminate the entirety of that minute net benefit to the estate, the Court should reject the application of Shapiro Sher outright. See, e.g. In re Great Sweats, Inc., supra, 113 B.R. at 243 (counsel's fee request is rejected in its entirety where it would leave the estate with a negative return on the litigation).

---

[4] In May 2002 the Court approved an application of Carruthers & Roth, PA, for $33,631.79 for the Xpres litigation. On June 21, 2000 it approved a Whiteford Taylor application for $5,640 for that litigation in its Ninth Application. On November 21, 2001, it authorized the payment of $35,891.99 to Penta Advisory Services.

The Shapiro Sher application is misleading to the extent that it indicates that the litigation against Xpres created a benefit of $1 million for the estate (Third Applic. ¶¶ 41, 101). That alleged benefit stemmed from an earlier Xpres litigation which ended in 1998 — two years before the litigation and services covered by the Shapiro Sher application. Shapiro Sher and Whiteford Taylor have already sought and received at least $18,259. and $59,618. in connection with that 1998 litigation. In fact, paragraphs 39-42 of the Third Application of Shapiro Sher were lifted verbatim from the First Application for fees filed by Shapiro Sher on or about November 30, 1998 for that earlier Xpres litigation, and thus do not describe the services covered by the Third Application. The only relevant paragraphs of the Third Application for the requested fees are paras. 43-47 which reveal that the gross benefit to the estate was only $80,000.

A review of the details of the Third Application of Shapiro Sher shows that denial of any more fees would be consistent with the Court's January 9, 2001 decision not to grant a $47,755 fee application by Counsel for the Debtor in connection with the Xpres litigation in 2000-01 because of concerns about possible duplication of services by attorneys. That concern was well-placed. Shapiro Sher's time records show that the law firms

8

duplicated services for the estate in several ways. First, Shapiro Sher lawyers attended depositions and court proceedings which counsel for the Debtor also attended (see the 10/15-10/16/00 and 10/4-10/15/00 time entries of Richard Goldberg, Esq. of Shapiro Sher and his travel expenses which en toto cost the estate over $12,000 in addition to the $10,000-plus which Whiteford Taylor has tried to collect for having one of its lawyers, Mr. Kopec, provide the same services). Second, numerous Shapiro Sher lawyers billed their time for their participation in the same conferences attended by another Shapiro Sher lawyer (in person and via phone). As noted in Leonard Jed, supra, 103 B.R. at 713, counsel are not allowed a fee for more than one lawyer who attended a conference. Third, Shapiro Sher lawyers had numerous conferences (in person and via telephone) with counsel for Debtor (e.g. see Shapiro Sher time entries for 9/19, 9/20, 9/28, 10/4, 10/5, 10/6, 10/7, 10/11, 10/13, 10/19 of 2000 for which Whiteford Taylor has indicated it will seek compensation in an upcoming fee application). Whiteford Taylor has already received interim approval for fees for its participation in certain conferences with Shapiro Sher lawyers on the Xpres litigation in 2000 (see, e.g. time entries for 2/17, 2/24, 2/25, 3/10 and 3/16 of 2000 in the Shapiro Sher application and the Ninth Application of Whiteford Taylor). In re Casey, 173 B.R. 893 (Bcy. E.D. Tex. 1994) (no fee where services duplicate already

9

compensated services of other counsel); In re Leonard Jed Co.,
supra, 103 B.R. at 713.

The Xpres segment of the Shapiro Sher application also
contains individual items which do not merit compensation.   For
example, throughout the first seven months of 2001, one Shapiro
Sher lawyer (DFG) spent 16.6 hours drafting and revising the fee
application of another law firm, local counsel in North Carolina,
at a purported cost of $145-165 per hour (i.e. a total of $2580).
There is no reason why that work on behalf of another law firm's
effort to obtain money from the estate should be compensated.

Shapiro Sher's application also bills the estate for work
totally unrelated to Xpres.   For example, it bills for work on a
deposition of Mr. Sher in a dispute with Sogo (2/29/00) and
preparation of an objection to a fee application of a Ms. Stacy
Boyd (8/29/00).   Those services did not provide the estate with any
benefit vis-a-vis any financial interest of the debtor in Xpres.

Finally, Shapiro Sher is also not entitled to reimbursement
from the estate for over $500 of unreimbursable expenses such as
messenger service/express mail ($52.25), long distance phone calls
($67.89), telecopy ($394.50) and Federal Express ($10.30) since

10

they are considered part of the law firm's overhead for running its business.  See, e.g. <u>In re Nat'l Quick Print, Inc.</u>, <u>supra</u>, 103 B.R. at 111.

## II.  <u>Spanish Assets Other Than Hinsua</u>

The Court should not award any of the $171,734.77 Shapiro Sher is seeking for services and expenses relating to the Debtor's assets in Spain (other than Hinsua) since, by Shapiro Sher's own admission (Third Applic., ¶ 13), its services as to those assets in this period did not return a single dollar for the estate.[5]  In the Debtor's Modified Fifth Amended Disclosure Statement, dated November 20, 1997 (which this Court approved on December 31, 1997), one of those assets — restaurant space — was valued at $5-6 million.  To date, Whiteford Taylor and Shapiro Sher have already received fees for their services on these assets.  An award of another fee for these unsuccessful services would run counter to the directive that the primary factor for awarding a fee under § 330(a) is the result achieved for the estate.  See, e.g., <u>In re Stern Office Furniture, Inc.</u>, 1994 U.S. Dist. LEXIS 5048, at **8-9 (D.Md. 1994):

---

[5] Shapiro Sher's Third Application also seeks to charge the estate almost $4,400 for unreimbursable expenses for its work on those Spanish assets:  postage ($6.05), messenger service and express mail ($375.10), telecopies ($2154), Federal Express and UPS ($362.90), and phone calls ($1379.41).

11

> "The whole purpose of a Chapter 11 filing
> is to accomplish the debtor's reorganization
> and net out a fair return for the unsecured
> creditors....   The services envisioned by
> section  330  are  services  to  the  estate
> resulting in some meaningful benefit received.
> If results were not given primary emphasis
> then there would be a proclivity on the part
> of professionals to engage in unwarranted and
> protracted work with the expectation of being
> compensated  no  matter  how  ineffective  or
> unwarranted the endeavor.   If counsel were
> assured of payment heedless of the merits or
> economy of litigation, then these factors
> typically considered by attorneys in any field
> of practice would be removed as a considera-
> tion in the area of bankruptcy practice."

Accord:   In re Lilliston, supra, 127 B.R. at 121 ("the right of

Debtor's counsel to compensation from the estate depends upon the

extent to which counsel's services benefit the estate").


At this stage it is appropriate to rely on the sage

instruction of Judge Mannes in In re York Village Associates, 1996

Bankr. LEXIS 1726, at *16 (Bcy. D.Md. 1996):

> "W&G [attorneys] spent a great deal of time
> beating a dying horse.  It urges that it did
> not know that the horse was near death when it
> invested  further  time  and  effort  in  the
> project.   If attorneys are not guarantors of
> the results in bankruptcy cases, they may not
> remain ostrich-like and ignore the reality of
> a case crumbling about them."

12

See also:  In re Crown Oil, Inc., 257 B.R. 531, 543 (Bcy. D.Mon.

2000).  Shapiro Sher has shown no "billing judgment" in seeking a

fee for its unproductive services on these Spanish assets.  No fee

should be allowed for them.


### III.  Hinsua

Shapiro Sher is seeking $326,732.43 for services and expenses

in connection with the sale of the Travelstead interest in Hinsua.[6]

It should receive no more than $100,000.


At the outset, it is worth noting that the sale of the

Debtor's interest in Hinsua produced a limited result for the

estate.  That interest was valued at $1.8 million — $3 million in

the Disclosure Statement approved by the Court at the end of 1997.

Yet, Shapiro Sher produced a sale of Hinsua to the Debtor for only

$600,000 plus the Debtor's assumption of some legal fees otherwise

due from the estate.  A limited result merits only a limited fee.

See, e.g., In re York Village Assocs., supra, 1996 Bankr. LEXIS at

*13-14.


Shapiro Sher is seeking over $190,000 for its travel time

---

[6] Any application by Whiteford Taylor is likely to show significant
duplicative services.  The absence of that information precludes any further
objection on the Shapiro Sher application on those grounds.

(about $65,000) and expenses ($127,024) to Spain on ten trips in the application period. The $65,000 charge for simply the travel time of lawyers should be disallowed since Shapiro Sher performed no services for the estate during its traveling to and from Spain. In those circumstances, courts have disallowed time charges for traveling in their entirety. Jungkurth v. Eastern Financial Services, Inc., 87 B.R. 333, 337 (E.D. Pa. 1988); In re Seneca Oil Co., 65 B.R. 902, 909 (Bcy. W.D.Okla. 1986). Other courts have significantly reduced the billing rate recoverable for travel time. See, e.g., In re Watson Seafood & Poultry Co., Inc., 40 B.R. 436, 443 (Bcy. E.D.N.C. 1984). Accord: In re Landing, Inc., 122 B.R. 701, 704 (Bcy. N.D.Ohio 1990); In re Anderson Grain Corp., 222 B.R. 528, 532 (Bcy. N.D.Tex. 1998) (ludicrous to charge full hourly rates for travel time); In re Bennett Funding Group, Inc., 213 B.R. 234, 251 (Bcy. N.D.N.Y. 1997).

However, in this matter non-productive travel time should not be compensated since the estate's assets will not satisfy the creditors' allowed claims. That factor alone should be governing since "the [a]bility of the debtor to pay the attorney's fee at the particular time the request is made is a major factor the court considers in allowing or disallowing interim compensation." In re Nana Daly's Pub, Ltd., 67 B.R. 782 (Bcy. E.D.N.Y. 1986); In re

14

Gloria Mfg. Corp., 20 B.R. 603 (Bcy. E.D.Va. 1982). As to the expenses of the air travel, the Court should allow reimbursement only after Shapiro Sher justifies why so many trips were required.

Shapiro Sher is also not entitled to a fee for the approximately $25,000 of other services for Hinsua which predate the late 2002 discussions with Mr. Javier Faus that jump-started the negotiations leading to the sale of Hinsua's assets in the summer of 2003 (Third Applic., ¶ 85). Some of it (e.g. Mr. Sher's providing testimony at Mr. Travelstead's criminal trial in Barcelona in January 2002) may have benefited the debtor. But, services which benefit the debtor, but not the estate, are not compensable. See, e.g. In re Lilliston, supra, 127 B.R. at 121.

Finally, Shapiro Sher's application also seeks to charge the estate about $850 for unreimbursable expenses for its work on Hinsua: messenger service and express mail ($171.52), telecopies ($178.50), Federal Express and UPS ($6.33) and phone calls ($483.45).

## Conclusion

The Court should defer ruling on the Third Application of Shapiro Sher until key current information is submitted to the Court on the assets of the estate and the fee request of Whiteford Taylor. However, if the Court should issue a ruling on the Third Application, it should sharply reduce the amount requested by Shapiro Sher since much of it is based on work which was duplicative and/or produced little or no benefit to the estate and since a fee award might very well deplete the remainder of the estate's assets, none of which, in the last four years, has been distributed to the creditors.

Dated:   December 22, 2003

                    Respectfully submitted,

                    Pollack & Kaminsky


by: *Edward T. McDermott*
                    Daniel A. Pollack
                    Martin I. Kaminsky
                    Edward T. McDermott

                    114 West 47th Street
                    Suite 1900
                    New York, New York 10036
                    (212) 575-4700

                        Attorneys for Creditor
                        Eduardo Canet

16

# POLLACK & KAMINSKY

### 114 WEST 47TH STREET, NEW YORK, NEW YORK 10036

TEL: (212) 575-4700

FAX: (212) 575-6560

DANIEL A. POLLACK
MARTIN I. KAMINSKY
EDWARD T. McDERMOTT

W. HANS KOBELT
JUSTIN CHU
ANTHONY ZACCARIA

December 11, 2003

**BY FAX & MAIL**

Joel Sher, Esq.
Shapiro Sher Guinot & Sandler
Charles Center South
36 South Charles Street, Suite 2000
Baltimore, MD 21201-3147

re: **Estate of G. Ware Travelstead**
Case No. 96-5-4979-SD

Dear Joel:

Please advise us promptly how much money is in the estate at this time as well as its nature (e.g. how much is in a checking account, in the escrow fund, etc.) and any payments you expect to make in the next three months.  Thanks.

Sincerely yours,

Edward T. McDermott
Attorney for Creditor
Eduardo Canet

ETM/jk

**EXHIBIT A**

# POLLACK & KAMINSKY

114 WEST 47TH STREET, NEW YORK, NEW YORK 10036

TEL: (212) 575-4700

FAX: (212) 575-6560

DANIEL A. POLLACK
MARTIN I. KAMINSKY
EDWARD T. McDERMOTT

W. HANS KOBELT
JUSTIN CHU
ANTHONY ZACCARIA

December 11, 2003

**BY FAX & MAIL**

Paul M. Nussbaum, Esq.
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1400
Baltimore, MD 21202

re: **G. Ware Travelstead**
Case No. 96-5-4979-SD

Dear Mr. Nussbaum:

Please advise us promptly of any developments in the discussions with the U.S. Attorney's office or other government representative about the tax returns of Mr. Travelstead since your August 26, 2003 letter to the Court.

We wish to know, inter alia, your understanding of: [1] how much of the $500,000 tax reserve will be paid to the IRS and when; and [2] how much will be released to the estate.

Sincerely,

Edward T. McDermott
Attorney for Creditor
Eduardo Canet

ETM/jk

**EXHIBIT B**

# WHITEFORD, TAYLOR & PRESTON
L.L.P.

210 WEST PENNSYLVANIA AVENUE
TOWSON, MARYLAND 21204-4515
TELEPHONE 410 832-2000
FAX 410 832-2015

20 COLUMBIA CORPORATE CENTER
10420 LITTLE PATUXENT PARKWAY
COLUMBIA, MARYLAND 21044-3528
TELEPHONE 410 884-0700
FAX 410 884-0719

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND 21202-1626
410 347-8700
Fax 410 625-7510
www.wtplaw.com

1025 CONNECTICUT AVENUE, NW
WASHINGTON, D.C. 20036-5405
TELEPHONE 202 659-6800
FAX 202 331-0573

1317 KING STREET
ALEXANDRIA, VIRGINIA 22314-2928
TELEPHONE 703 836-5742
FAX 703 836-0265

PAUL M. NUSSBAUM
DIRECT NUMBER
410 347-8794
pnussbaum@wtplaw.com

December 15, 2003

*__Via Facsimile (212) 575-6560__*
*__And First Class Mail__*
Edward T. McDermott, Esquire
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

Re:   G. Ware Travelstead
      Case No. 96-5-4979-SD

Dear Mr. McDermott:

I am responding to your letter dated December 11, 2003. Please be advised that negotiations with the IRS had stalled and that the Debtor had recommended to the Liquidating Agent that he recommence the stayed litigation to resolve the tax dispute. Recently, however, we were able to eliminate the procedural obstacles raised by the IRS and the negotiations contemplated can commence any time. Unfortunately, the next step in completing negotiations requires the assistance of the estate's accountants, Grant Thornton, who have indicated they will not be able to participate until their invoices to the Liquidating Agent have been paid. We are discussing these issues with the Liquidating Agent presently.

Sincerely,

Paul M. Nussbaum

cc:   Joel I. Sher, Esquire (via facsimile)
      Cameron J. Macdonald, Esquire

1451691v2

United States Bankruptcy Court
for the District of Maryland
(Northern Division)

```
                          )
In Re:            -       )      Case No. 96-5-4979-SD
                          )
G. Ware Travelstead,      )          Chapter 11
                          )
              Debtor.     )
                          )
```

Certificate of Service

I hereby certify that on this 22nd day of December, 2003 a copy of the foregoing Objection of Creditor Eduardo Canet to Third Application of Shapiro Sher Guinot & Sandler and Liquidating Agent for Interim Allowance of Compensation and Reimbursement of Expenses was sent by Federal Express to:

Joel I. Sher, Esq., Liquidating Agt
Shapiro Sher Guinot & Sandler
36 S. Charles St., Ste. 200
Baltimore, MD 21201

Paul M. Nussbaum, Esquire
Whiteford, Taylor & Preston, LLP
7 Saint Paul Street, Suite 1400
Baltimore, MD 21202-1626

United States Bankruptcy Trustee
300 W. Pratt Street
Suite 350
Baltimore, MD 21201

Edward T. McDermott