United States Bankruptcy Court
for the District of Maryland
(Northern Division)

| | |
|---|---|
| In Re: | ) Bankruptcy No. 96-5-4979-SD |
| | ) |
| G. Ware Travelstead, | ) Chapter 11 |
| | ) |
| Debtor. | ) |

FILED
FEB 05 2004
CLERK'S OFFICE
U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

Objection of Creditor Eduardo Canet
to Eleventh Application of
Whiteford Taylor & Preston, L.L.P.
for Interim Allowance of
Compensation and Reimbursement of Expenses
in the Period November 1, 2000 - November 30, 2003
and Other Relief

## Overview

Eduardo Canet, an unsecured creditor of G. Ware Travelstead (the "Debtor"), submits this objection to the Eleventh Application of Whiteford Taylor & Preston, L.L.P. ("Whiteford Taylor") for $494,220.35, including $54,576.57 which this Court has previously declined to approve after an earlier request by Whiteford Taylor.

Approval of Whiteford Taylor's request for those fees and expenses would increase their interim-approved fees to over

1

$2.6 million. It would also allow Whiteford Taylor over $600,000 while the unsecured creditors would have received nothing over the three years covered in its Eleventh Application. The requested award would also deplete the remaining funds in the estate and reward Whiteford Taylor despite its repeated failures to produce anything but $80,000 for the estate on several major ill-conceived ventures. For example, several litigations prosecuted by Whiteford Taylor produced losses of several hundred thousand dollars for the estate. In addition, some Whiteford Taylor services were for the Debtor when his interests were adverse to those of the Estate. For those and other reasons detailed below, Canet respectfully submits that the Court should approve no more than $175,000 of the fees and expenses[1] in which Whiteford Taylor now seeks allowance.

## Governing Legal Principles

The Whiteford Taylor application should be denied to the extent that it runs afoul of or does not otherwise satisfy these billing guidelines:

1. The estate is not to pay for services which benefit the Debtor, but not the estate. See, e.g. <u>In re Lilliston</u>,

---

[1] The only specific expense objected to is an apparent case of double-billing. See discussion in footnote 6.

127 B.R. 119, 121 (Bcy. D.Md. 1991) (Derby, J.);

2. The primary criterion for justifying a fee is the result achieved for the estate. <u>In re Stern Office Furniture, Inc.</u>, 1994 U.S. Dist. LEXIS 5048, at \*\*8-9 (D.Md. 1994); <u>In re Grimm</u>, 156 B.R. 958, 961 (Bcy. E.D.Va. 1993) ("benefit to the estate is a prerequisite for an award of fees and expenses under § 330(a)"); <u>In re Lilliston</u>, 127 B.R. at 121; <u>In re Great Sweats, Inc.</u>, 113 B.R. 240, 240-41 (Bcy. E.D.Va. 1990);

3. The applicant is to apply "billing judgment" — e.g. it is not to seek a fee for services regardless of the likely as well as actual outcome produced by the service. <u>In re Great Sweats, Inc.</u>, <u>supra</u>, 113 B.R. at 243; <u>In re Leonard Jed Co.</u>, 103 B.R. 706, 713-14 (Bcy. D.Md. 1989);

4. Bills should not be paid where they "lump" services or do not specify the services allegedly rendered on behalf of the estate. <u>In re Ward</u>, 190 B.R. 242, 247 (Bcy. D.Md. 1995); <u>In re Leonard Jed Co.</u>, <u>supra</u>, 103 B.R. at 712; <u>In re Citrone Development Corp.</u>, 106 B.R. 359, 361-62 (Bcy. S.D.N.Y. 1989);

5. Travel time is to be compensated at no more than half-rate. In some circumstances, courts have disallowed time charges for traveling in their entirety. <u>Jungkurth v. Eastern Financial Services, Inc.</u>, 87 B.R. 333, 337 (E.D. Pa. 1988); <u>In re Seneca Oil Co.</u>, 65 B.R. 902, 909 (Bcy. W.D.Okla. 1986). Other courts have significantly reduced the billing rate recoverable for travel time. See, e.g., Court Order, dated January 23, 2004; <u>In re Watson Seafood & Poultry Co., Inc.</u>, 40 B.R. 436, 443 (Bcy. E.D.N.C. 1984); <u>In re Anderson Grain Corp.</u>, 222 B.R. 528, 532 (Bcy. N.D.Tex. 1998) (ludicrous to charge full hourly rates for travel time); <u>In re Bennett Funding Group, Inc.</u>, 213 B.R. 234, 251 (Bcy. N.D.N.Y. 1997); and

6. The debtor and his counsel are not entitled to reimbursement for expenses related to non-professional services on the Debtor's behalf (in particular, those of Ms. Stacy Boyd). See, e.g. <u>In re Bonds Lucky Foods, Inc.</u>, 76 B.R. 664 (E.D. Ark. 1986).[2]

---

[2] Canet recognizes and acknowledges this Court's Order, dated January 23, 2004, and its oral ruling on January 15, 2003 on a fee application of Shapiro Sher & Guinot and the Liquidating Agent. In the interest of brevity and judicial efficiency, Canet hereby incorporates, rather than restates, his arguments and authorities in his discussion of each of the following items in his objection to
(continued...)

**The Challenged Services**

1. <u>Services for Debtor, not the estate</u> — From April 30, 2003 through the last billed services on October 8, 2003, $13,432 of Whiteford Taylor's services and unspecified expenses on the "Spanish Issues" were on behalf of the Debtor Travelstead, and not the Estate. In that period, after the Liquidating Agent gave prompt notice of the April 29, 2003 offer of Mr. Faus for the Barcelona parking spaces, Whiteford Taylor was helping Travelstead prepare, make and then consummate his own offer to buy the parking spaces in Barcelona from the estate. In those activities a goal of the Debtor and thus Whiteford Taylor was to minimize the amount to be paid to the estate, while it was in the interest of the estate to maximize what the Debtor might pay. Travelstead, not the estate, should pay for those services. See also the discussion in the "Spanish Issues" about other services apparently on behalf of the Debtor's effort to get a consulting agreement to help others acquire alleged assets of the estate.

2 and 3. <u>"Billing Judgment" and Results</u> — This objection is directed at the $366,469 sought for services in the litigations

---

[2](...continued)
that fee application: (1) reimbursable expenses; (2) duplication of services; (3) excessive travel time, etc.

against Xpres, Sogo and Velasquez and in connection with the "Spanish Issues." As a whole, these litigations caused the estate to almost <u>lose</u> over $400,000, if this Application were allowed. The Sogo and Velasquez cases produced no cash benefit for the estate. And, none of the small cash benefit produced by the Xpres action remains in the estate. The Whiteford Taylor work on the "Spanish Issues" also produced no cash benefit for the estate since the Hinsua sale took place when Whiteford Taylor was working for the buyer. In addition, Whiteford Taylor's services featured a lack of "billing judgment" by Whiteford Taylor, as detailed below.

### a. The 2000-01 Litigation Against Xpres

None of the requested $80,795[3] of fees and unspecified expenses should be allowed to Whiteford Taylor in connection with its doomed effort to thwart a sale of Xpres Corporation. Professionals have already received the entire $80,000 cash benefit received by the estate. To date, the Court has already given interim approval of almost $120,000 of costs associated with that litigation:

---

[3] This number includes Whiteford Taylor's express request of $31,067.50 for the Xpres litigation, $1,973 for its services with an expert and local counsel used in that litigation (Exh. A) and its prior request which the Court declined to approve at that time. The fee request for services with the expert and local counsel are treated here since they were rendered in the Xpres litigation. That treatment is also consistent with the treatment in the Third Application of the Liquidating Agent and his firm in their Application.

6

  (1) $33,631.79 of attorneys' fees, etc. for Carruthers & Roth, P.A., the local North Caroline counsel in that action;

  (2) $5,640 of fees, etc. for Whiteford Taylor;

  (3) $35,891.59 of fees, etc. for the Debtor's expert (Penta Advisory Services); and

  (4) $43,721 of fees, etc. for Shapiro Sher & Guinot and the Liquidating Agent.[4]

Thus, as of today, the estate has already paid professionals approximately one and one-half times its net benefit from the Xpres litigation of 2000-01. An advance of any of the Whiteford Taylor application for $80,795 would only increase the loss suffered by the estate in that high-risk venture. Payment of the request in full would produce a _loss_ of over $100,000. Thus, while the Court reduced the Liquidating Agent's fee request for his firm's services in the Xpres litigation by one-third, Canet submits that the Court should reject the application of Whiteford Taylor outright. See, e.g. In re Great Sweats, Inc., _supra_, 113 B.R. at 243 (counsel's fee request is rejected in its entirety where it would leave the estate with a negative return on the litigation).

---

[4] In May 2002 the Court approved an application of Carruthers & Roth, PA, for $33,631.79 for the Xpres litigation. On June 21, 2000 it approved a Whiteford Taylor application for $5,640 for that litigation in its Ninth Application. On November 21, 2001, it authorized the payment of $35,891.99 to Penta Advisory Services. On January 15, 2004, it authorized the payment of $43,721 to Shapiro Sher & Guinot and the Liquidating Agent. See also Court Order, dated January 23, 2004.

7

### b. The Litigation Against Sogo

No additional fee should be allowed for the services in that litigation. That litigation produced <u>no</u> cash benefit for the estate. To date, the Court has already approved $73,659 in fees, of Whiteford Taylor. An award of the requested $82,011.50 would more than double the <u>loss</u> of the estate to $155,670.

That litigation also featured a misconceived pleading in federal court. That action was stayed while the dispute was moved to an arbitration panel. No hearing ever took place. (Applic. ¶ 51). Even before then, it became clear that the action was misconceived. It took over one year before service of the complaint was effected on Sogo Japan which shortly thereafter went into bankruptcy (Applic. ¶ 48). And, last but not least, the litigation to obtain financial information was apparently prosecuted in this period on the mistaken belief that the Debtor had a viable "put" option to sell the Hotel Arts to Sogo USA which, in truth, had expired at the end of 1999 (Applic. ¶ 45).

### c. The Litigation Against Velasquez

No additional fee should be allowed for the services for that litigation. That litigation ended with <u>no</u> cash benefit to the estate. The Debtor terminated it as part of a settlement. After

the Spanish action against the Debtor (which Velasquez had prompted) had collapsed at trial, it was then dropped by the Spanish authorities and Velasquez when the Debtor agreed not to pursue his action against Velasquez. To date, the Court has already given interim approval of $41,820.50 in fees, etc. of Whiteford Taylor. An award of any of the additional $90,343.50 in fees and unspecified expenses would simply increase the estate's loss in that litigation to as much as $132,164,000.

### d. The Spanish Issues[5]

The Application's $103,320 request for services in connection with the "Spanish Issues," includes over $20,000 in compensation for services for a doomed effort to sell Hotel assets to a group in Holland during the period July 12, 2001 – September 26, 2001. That effort not only failed but also involved an agreement whereby the Debtor was to serve as a consultant to the Dutch group (Applic. ¶ 52). In those dealings, it would seem improper for the Debtor to act simultaneously on behalf of the Dutch Group and the estate. Counsel for the Debtor should not be compensated for helping the Debtor attempt to achieve that goal of the Dutch Group. Thus, the

---

[5] Canet also objects to the fees on the "Spanish Issues" for reasons set forth in his objection to the Third Application of the Liquidating Agent, namely the unproductive services before the offer by Mr. Faus and the excessive travel time. The travel time is covered separately on pp. 10-11.

Court should reduce the bill for the "Spanish Issues" to $83,000 less the other amounts improperly billed for travel time and Whiteford Taylor's services for Travelstead's purchase of the parking spaces. Thus, the proper fee should be about $60,000.

4. <u>Unspecified Services</u> — Listed services are not billable unless the bill describes the services with some detail and are not lumped together. For example, listing a participant in a phone call with a lawyer is not sufficient. The highlighted items in Exh. B totaling about $5,600 in services lack the required details and/or differentiation and thus are not compensable. See, e.g., <u>In re Ward</u>, 190 B.R. 242, 247 (Bcy. D.Md. 1995); <u>In re Leonard Jed Co.</u>, 103 B.R. 706, 712 (Bcy. D.Md. 1989); <u>In re Citrone Development Corp.</u>, 106 B.R. 359, 361-62 (Bcy. S.D.N.Y. 1989).

5. <u>Travel Time</u> — In this billing period, Whiteford Taylor has billed approximately $45,000 for traveling time (see Exh. C). Pursuant to the Court's Ruling of January 15, 2003 and its January 23, 2004 Order (as well as the precedent cited above), that amount should be reduced by at least one-half.[6]

---

[6] The Application also seeks reimbursement for $389.00 of travel expenses on 12/18/02 (Exh. D). $280 of those expenses was paid by Canet in early 2003 (<u>id</u>.) and should not be billed a second time to the estate.

6.   <u>Services for Ms. Stacey Boyd</u> — An application to have the estate pay for the services of Ms. Stacey Boyd, a secretary to the Debtor Travelstead, has never been and should never be approved by this Court.  The Liquidating Agent has opposed that application (See Liquidating Agent's Opposition to Application of Debtor for Allowance and Payment of Administrative Claim of Stacey Boyd, dated August 29, 2000).  Canet also would oppose any fee for Ms. Boyd because, <u>inter alia</u>, she is not a professional.  The Court should here reject the Whiteford Taylor application for compensation of the $885 of its services for Ms. Boyd, which are covered in the section entitled Employment of Professionals and Fees (see Exh. E).

## Conclusion

The Court should award no more than $175,000 pursuant to the Eleventh Application of Whiteford Taylor & Preston, L.L.P.

Dated:   February 4, 2004

>                    Respectfully submitted,
>
>                    Pollack & Kaminsky
>
>                    by: *[signature: Edward T. McDermott]*
>                    Daniel A. Pollack
>                    Martin I. Kaminsky
>                    Edward T. McDermott
>                    *cont'd...*

```
114 West 47th Street
Suite 1900
New York, New York 10036
(212) 575-4700

    Attorneys for Creditor
       Eduardo Canet
```