**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | |
| **G. WARE TRAVELSTEAD,** | * | Case No. 96-5-4979-SD |
| | | (Chapter 11) |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION OF LIQUIDATING AGENT FOR AUTHORITY TO SELL**
**INTERESTS IN AND ASSOCIATED WITH BABBITT RANCHES L.L.C.**
**FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

Joel I. Sher, Liquidating Agent, by his undersigned counsel, pursuant to sections 363(b) and (f) of the Bankruptcy Code and the confirmed Third Modified Fourth Amended Plan of Reorganization, moves for authority to sell all of the Debtor's right, title and interests in and associated with Babbitt Ranches, L.L.C., free and clear of all liens, claims and encumbrances and, in support thereof, states:

1.  On December 31, 1997, this Court entered the Order (the "Confirmation Order") Approving Debtor's Modified Fifth Amended Disclosure Statement and Confirming the Debtor's Third Modified Fourth Amended Plan of Reorganization (the "Plan").

2.  On that same date, the Bankruptcy Court entered an order authorizing the appointment of Joel I. Sher as the liquidating agent. Furthermore, section 6.1 of the Plan appoints Joel I. Sher as the liquidating agent (the "Liquidating Agent").

3.  Pursuant to the Confirmation Order, the Liquidating Agent has "the right and standing to pursue and defend any claims or rights of action in respect of the property of the estate or of the debtor." *Confirmation Order* at Pg. 3. The Plan further grants the Liquidating Agent, *inter alia,* "all of the rights, duties, obligations, and powers of a trustee including, but not limited to those set forth

in §§704(1) and 1106 of the Bankruptcy Code." *Plan* at Article 6.5(a). The Liquidating Agent is to continue in this capacity "until the distributions to all creditors of all payments required under the Plan are completed and the case is closed." *Plan* at Article 6.3. Distributions to creditors have not been completed and the case has not been closed.

4. The Confirmation Order modified, in part, the terms of the Plan to insure that the Liquidating Agent's authority would extend to all assets which Travelstead owned as of the petition date of May 31, 1996. In that regard the Confirmation Order provides "….that the rights, duties and obligations of the Liquidating Agent, as defined in the Plan, shall be applicable to all of the assets of the estate, <u>whether known or unknown</u>, until such time as creditors are paid in full pursuant to the Plan….." *Confirmation Order* at Pg. 3.

5. By this motion the Liquidating Agent seeks to sell all of the Debtor's right, title and legal interest in (i) five hundred twenty-four (524) shares of the common stock of C.O. Bar, Inc., and (ii) five hundred twenty-four (524) units of ownership interest in Babbitt Ranches L.L.C. ("Babbitt Ranches")

**Babbitt Ranches**

6. Babbitt Ranches is an Arizona limited liability company, whose primary assets are the CO Bar Ranch ("Bar Ranch") and the Espee Ranch ("Espee Ranch"). Bar Ranch is located in Coconino County, Arizona, approximately 115 miles north of Phoenix, Arizona. Bar Ranch is comprised of approximately 381,000 acres and consists primarily of open rolling grasslands and some woodlands. Espee Ranch is also located in Coconino County, Arizona, approximately 165 miles north of Phoenix, Arizona. Espee is comprised of approximately 142,000 acres of land which are also primarily open rolling grasslands and some woodlands.

7. Based upon his investigation, the Liquidating Agent has determined that the Debtor owns a 2.844% membership interest in Babbitt Ranches, which interest was acquired in December 1993, pursuant to three separate assignments of membership interests representing (i) approximately 524 shares (the "Shares") of C.O. Bar, Inc., and (ii) 524 units of ownership interest (the "Units") (collectively the Shares and the Units are referred to as the "Ownership Interests") in Babbitt Ranches. The Ownership Interests are property of the Debtor's estate and are subject to the rights of the Liquidating Agent. It is the Debtor's interest in those Ownership Interests which the Liquidating Agent now seeks to sell.

8. C.O. Bar, Inc. ("Inc") is an Arizona corporation with its principal place of business located in Flagstaff, Arizona. Inc owns a 1% membership interest in Babbitt Ranches and also serves as its manager.

9. In conjunction with each member's ownership interest in Babbitt Ranches, a member also receives an allocable number of shares of Inc. However, because of the limited ownership interest of Inc in Babbitt Ranches and the associated rights therein, an ownership interest in Inc has only nominal value. The bulk of the value of a member's ownership interest in Babbitt Ranches is attributable to his interest in the units of ownership interest.

10. The rights of the members of Babbitt Ranches are governed by the Operating Agreement of Babbitt Ranches, LLC, dated as of December 6, 1993 (the "Operating Agreement"). Pursuant to the terms of the Operating Agreement, a member of Babbitt Ranches is entitled to receive from time to time, certain dividends as determined by the manager. In the course of his investigation, the Liquidating Agent learned that unbeknownst to the Liquidating Agent, the Debtor received certain dividends from Babbitt Ranches during the pendency of this bankruptcy case.

11. The Operating Agreement also contains restrictions on the transfer or assignment of a membership interest, including that no person may become an assignee of a member's interest unless and until the manager or managers of Babbitt Ranches unanimously consents to such transfer, provided however, said managers may grant to withhold that assignment in their discretion.

12. In furtherance of his duties, the Liquidating Agent reviewed a number of the books and records of Babbitt Ranches in order to determine the value of the Ownership Interests and to determine if the Ownership Interests can be liquidated for the benefit of creditors of this estate. In furtherance of that due diligence, the Liquidating Agent reviewed, *inter alia*, (i) the Operating Agreement, (ii) Articles of Incorporation for Inc, (iii) partnership tax returns for Babbitt Ranches, (iv) appraisals of Bar Ranch and Espee Ranch and (v) other information concerning distributions to the Debtor. The Liquidating Agent also consulted, from time to time, with representatives of Babbitt Ranches. As a result, the Liquidating Agent concluded that there is little, if any, market for the Ownership Interests, and that transfers of similar interests have generally been between family members. Moreover, the Liquidating Agent determined that the dividends payable to the holders of membership interests (and specifically the 2.844% interest held by the Debtor) have been nominal to date, and are expected to continue as such in the future.

13. The appraisal of Bar Ranch and Espee Ranch indicates that the aggregate market value of their fee simple and lease-hold interests is approximately $26,450,000 as of November 21, 2002. Thus, on a straight mathematical basis the Ownership Interests' pro rata share of that aggregate value is approximately $750,000. However, in determining the actual fair market value of the Ownership Interests, the Liquidating Agent determined that a reduction of that value is warranted based on the thinly traded market for and the minority interest of the Ownership Interests.

14. As a result of the foregoing, the Liquidating Agent entered into negotiations with representatives of Babbitt Ranches concerning the disposition of the Ownership Interests. As a result of those negotiations, the Liquidating Agent entered into a Purchase, Sale and Settlement Agreement (the "PSA") dated as of July 29, 2005. Pursuant to the terms of the PSA, the Liquidating Agent agreed to sell all the Debtor's right, title and interest in the Ownership Interests to St. Francis Property LLC ("St. Francis"). St. Francis is a limited liability company organized under the laws of the State of Arizona and controlled by the President of Babbitt Ranches. A copy of the PSA is attached hereto as Exhibit A.

15. As more fully set forth in the PSA, St. Francis has agreed to pay to the Liquidating Agent the sum of $262,000 for the Ownership Interests. As additional consideration, St. Francis has agreed to pay the Liquidating Agent (i) the sum of $38,645 in consideration of those dividends previously paid to the Debtor which Liquidating Agent contends should have been paid to him or the estate of the Debtor and (ii) the sum of $10,000.00 to defray the legal expenses incurred by the Liquidating Agent in conjunction with his investigation of the Ownership Interests.

16. The obligations of the parties to the PSA are contingent upon (i) entry of an order of the Bankruptcy Court authorizing the sale of the Ownership Interests free and clear of all liens, claims and encumbrances, including, but not limited to, the West Claims (as hereinafter discussed and defined), and (ii) either (a) entry of an order by a court of competent jurisdiction dismissing with prejudice a lawsuit originally filed in the United States District Court for the District of Arizona, Prescott Division ("Arizona Court"), Case No. 04-CV-2934 (the "District Court Litigation") against Babbitt Ranches, Bar Ranch, Espee Ranch, Cataract Ranch, Babbitt Brothers Trading Company, and Inc ("collectively the "Babbitt Parties"), or (b) entry of an order by a court of competent jurisdiction

in favor of the Babbitt Parties in the District Court Litigation, which order has become final and non-appealable.

## The West Litigation

17. On or about January 15, 2005, Larry J. West, as trustee of West Companies Defined Benefit Pension Plan and Trust ("West"), filed an Amended Complaint in the Arizona Court, against the Debtor and the Babbitt Parties. A copy of the Amended Complaint is attached as Exhibit B.

18. As more fully set forth in the Amended Complaint, West alleges, *inter alia,* that on or about October 30, 2003, he received an assignment of the Shares from the Debtor, in consideration of a loan West allegedly made to the Debtor in the approximate amount of $500,000.00. Through the District Court Litigation, West seeks (i) a declaration that he is the lawful owners of the Shares and (ii) an injunction prohibiting the Debtor from making any further assignment of the Shares.

19. Upon learning of the District Court Litigation, the Liquidating Agent filed a (i) Motion to Intervene and (ii) Motion To Dismiss The Amended Complaint For Improper Venue Or In The Alternative, To Transfer Venue (collectively, the "Liquidating Agent's Motions"). Copies of the Liquidating Agent's Motions are attached as Exhibit C. In addition, the Babbitt Parties filed a Motion To Dismiss, a copy of which is attached as Exhibit D.

20. The Liquidating Agent's Motions and the Babbitt Parties' Motion To Dismiss are currently set for hearing before the United States District Court for the District of Arizona on September 9, 2005.[1]

---

[1] Recognizing the present jurisdictional posture, the PSA provides that (i) it is subject to approval of this Court and (ii) a condition precedent to closing is a successful resolution of the District Court Litigation. Depending on the disposition of the Liquidating Agent's Motions, the District Court Litigation may be resolved by either the Arizona Court or this Court. The Liquidating Agent will file a copy of this motion in the Arizona Court so that it is aware of the pendency of the motion.

21.     In papers filed in the District Court Litigation, West admitted that he was aware of the pendency of this bankruptcy case at the time he obtained the alleged assignment of the Shares, but that he was advised by the Debtor, *inter alia*, that the Shares had been held out of this bankruptcy case on a "technicality".   Notwithstanding any statements which the Debtor may have made, the notion that the Ownership Interests are not property of the estate and are not subject to the Plan and Confirmation Order is without merit.

22.     A review of pleadings filed by West in the District Court Litigation also reveals that West did not receive an assignment of the Units, but rather only an alleged assignment of the Shares.  Notwithstanding that the Units are free and clear of any actual lien or claim of West, the District Court Litigation has created a cloud upon the title to the Units, as well as a disputed claim against the Shares.

23.     The Liquidating Agent believes that the purported assignment of the Shares to West was invalid and *void ab initio* because (i) the Debtor lacked the authority to transfer the Shares without the Liquidating Agent and the Bankruptcy Court's approval thereof—neither of which were obtained, (ii) the Debtor and West failed to advise or consult with the Liquidating Agent before the alleged assignment, (iii) the purported assignment failed to comply with the terms of the Operating Agreement and (iv) the purported assignment fails to comply with applicable law.  Thus, the claims, if any, of West in the Shares are in bona fide dispute.

24.      Moreover, notwithstanding what West thinks he obtained from the Debtor, the only evidence of an assignment is a document held by West entitled "Pledge Of Shares Of Stock" dated October 30, 2003, a copy of which is attached hereto as Exhibit E.  Even if that purported document created an enforceable assignment of the Shares, it would not have constituted a transfer of, or a lien upon the Units.  Thus, any claims of West in the Units are in bona fide dispute.

**Benefit to the Bankruptcy Estate**

25.     The approval of this motion authorizing the sale is in the best interest of creditors and this bankruptcy estate because, *inter alia*, (i) the purchase price is a reasonable offer for the Ownership Interests being purchased, and (ii) the net proceeds[2] of the transaction will enable the Liquidating Agent to make further distributions in accordance with the Plan.

26.     The Liquidating Agent has undertaken an analysis of the value of the Ownership Interests.  In that regard, the Liquidating Agent has, *inter alia*, (i) considered the appraisals of Bar Ranch and Espee Ranch, (ii) interviewed interested parties, (iii) consulted with the Debtor's professionals, and (iv) made such additional inquiries as he deemed prudent.  As a result the Liquidating Agent believes that the offer set forth in the PSA is squarely within the range of the amount that the Liquidating Agent believes is reasonable.

**Sale Free and Clear of Liens, Claims or Interests**

27.     Pursuant to Section 363(b)(1) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell or lease property of the estate other than in the ordinary course of business. Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any interest in such property of an entity other than the estate if (i) permitted under applicable non-bankruptcy law, (ii) the party asserting such interest consents, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

---

[2]  In accordance with the Plan, the Liquidating Agent will also seek to reserve sums for the payment of taxes that may be incurred as a result of the proposed transaction.

28. Section 363(f) of the Bankruptcy Code is stated in the disjunctive when a sale is being made pursuant to Section 363(b). In such circumstances, as here, the Liquidating Agent, with the powers provided by the Plan and Order, need only satisfy one of the five conditions of Section 363(f). The Liquidating Agent believes, and therefore avers, that he will be able to demonstrate that he has satisfied one or more of these conditions with respect to each and every entity having an interest in or lien upon such property and that he should be authorized to sell the Ownership Interests free and clear of all such liens, claims, encumbrances and interests except as set forth herein. Specifically, any party claiming an interest or lien upon the Ownership Interests being sold either (a) will have or will consent to the sale under Section 363(f)(2); (b) will hold liens that are in bona fide dispute; (c) will have an interest or a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, or (d) can be compelled, in a legal equitable proceeding, to accept a money satisfaction for such lien.

### Conclusion

29. The Liquidating Agent believes that the sale of the Ownership Interests to St. Francis pursuant to the PSA is in the best interest of creditors.

WHEREFORE, for the foregoing reasons, Joel I. Sher, Liquidating Agent, respectfully requests the following relief:

A. That the Motion be granted;

B. That the Order in the form submitted herewith be approved;

C. That the Liquidating Agent be authorized to sell the Ownership Interests to St. Francis pursuant to the PSA in exchange for the consideration set forth in the PSA;

D. That the Liquidating Agent be authorized to take any and all actions as may be necessary and appropriate to effectuate the terms of the PSA, to settle in connection with the PSA

and to consummate the transactions contemplated therein, including, without limitation, executing and delivering in the name of the Debtor as his attorney-in-fact any and all documents, instruments of transfer, conveyance documents and other documents (both before and after closing) necessary to consummate and settle the PSA and the transactions contemplated thereby;

    E.    That the Liquidating Agent be authorized, as needed, to stand in the shoes of the Debtor, and be granted and endowed with all the Debtor's rights and powers appurtenant to his Ownership Interest; and

    F.    That the Liquidating Agent be granted such other and further relief as is just and equitable.

/s/    Joel I. Sher
Joel I. Sher, Bar No. 00719

Shapiro Sher Guinot & Sandler
36 South Charles Street
20th Floor
Baltimore, Maryland 21201
410-385-0202

*Attorneys for the Liquidating Agent*

F:\LIT\JISHER\WPDATA\TravelsteadBabbitSaleMotion.doc

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 29th day of July, 2005, a copy of the foregoing was served by first-class mail, postage prepaid, on the following:

    Paul M. Nussbaum, Esquire
    Stephen F. Fruin, Esquire
    Whiteford, Taylor & Preston
    7 St. Paul Street
    Baltimore, MD  21202-1626

    Mark A. Neal, Esquire
    Assistant U.S. Trustee
    Office of the United States Trustee
    300 West Pratt Street, Suite 350
    Baltimore, MD   21201

    Richard M. Grimsrud, Esquire
    P.O. Box 639
    Flagstaff, Arizona 86002

    Todd Feltus, Esquire
    Snell & Wilmer L.L.P.
    One Phoenix Center
    400 E. Van Buren
    Phoenix, AZ, 85004-2202

    Edward McDermott, Esquire
    Pollack & Kaminsky
    114 West 47th Street, 19th Floor
    New York, NY  10036

                          /s/     Joel I. Sher
                          Joel I. Sher