# Exhibit D

Andrew F. Halaby (#017251)
Todd Feltus (#019076)
Nathan M. Smith (#023471)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ  85004-2202
Telephone: (602) 382-6000
Attorneys for Defendants Babbitt Ranches, LLC; C.O. Ranch; Espee Ranch; Cataract Ranch; Babbitt Brothers Trading Company; and C.O. Bar, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry J. West, trustee of West Companies Defined Benefit Plan & Trust,<br><br>Plaintiff,<br><br>v.<br><br>G. Ware Travelstead; Babbitt Ranches, LLC; C.O. Ranch; Espee Ranch; Cataract Ranch; Babbitt Brothers Trading Company; and C.O. Bar, Inc.,<br><br>Defendants. | No. CV-04-2934-PCT-JAT<br><br>**BABBITT DEFENDANTS' MOTION TO DISMISS**<br><br>(Oral Argument Requested) |

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Babbitt Ranches, LLC; C.O. Ranch; Espee Ranch; Cataract Ranch; Babbitt Brothers Trading Company; and C.O. Bar, Inc. (collectively the "Babbitt defendants") move to dismiss the Amended Complaint for failure to state a claim. According the allegations in the Amended Complaint, plaintiff Larry J. West, trustee of West Companies Defined Benefit Plan and Trust ("West") has no shareholder interest whatsoever in Babbitt Ranches, LLC, C.O. Ranch, Espee Ranch, Cataract Ranch, and Babbitt Brothers Trading Company. As to C.O. Bar, Inc., West has failed to perfect his security interest in the pledge of shares from defendant G. Ware Travelstead. Accordingly, a matter of law, West is not entitled

to declaratory relief that he has shareholder rights in C.O. Bar, Inc. or any of the corresponding injunctive relief that he is seeking. Moreover, because West has no shareholder rights in any of the Babbitt defendants, he is not entitled to inspect their book and records. For these reasons, West's Amended Complaint against the Babbitt defendants should be dismissed in its entirety. This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND.

In this action, West has dragged the Babbitt defendants into the comedy of errors that permeates his transaction with Ware Travelstead. According to the Amended Complaint, Travelstead owed West $500,000 from a "commercial investment and loan and guaranteed profit" arrangement. (Am. Compl. ¶ 3.) As security for the amount due, Travelstead pledged his shares in what West alleges are in the "Babbitt Interests." The Pledge of Share of Stock that documents this pledge, however, describes the pledge as "524 shares of stock of C O BAR, INC."[1] (Ex. A to Am. Compl.) West alleges that Travelstead failed to make any payment to West, and through this action is seeking to have his alleged shareholder rights recognized in the Babbitt defendants.

West asserts three claims against the Babbitt defendants. First, West seeks declaratory relief that he "is the lawful owner of the Shares, and all rights appurtenant thereto, and that such fact shall be reflected on the Babbitt Interests' stock transfer

---

[1] As they must, for purposes of the motion to dismiss, the Babbitt defendants accept as true all of the factual allegations made in the Amended Complaint. *See, e.g., Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000); *Hillery v. Georgie Boy Mfg, Inc.*, 341 F. Supp. 2d 1112, 1114 (D. Ariz. 2004). Because the Pledge of Shares of Stock is attached to the Amended Complaint, it can be considered in ruling on the motion to dismiss. *See* Fed. R. Civ. P. 10(c).

records."[2] (Am. Compl. ¶ 27.) Second, West seeks an injunction to direct the Babbitt defendants "to record Plaintiff's ownership of the Shares on the stock register of the Babbitt Interests and accord Plaintiff all of the rights of a shareholder therein." (Am. Compl. ¶ 32.) Third, West seeks an inspection of the books and records of the Babbitt defendants. (Am. Compl. ¶ 38.)

The transaction between West and Travelstead suffers from three fundamental errors, each of which — as a matter of law — keeps West from stating a claim for relief against the Babbitt defendants.

### A. Fundamental Error #1: West and Travelstead Never Sought Approval from the Bankruptcy Court or the Liquidating Agent Appointed to Sell Travelstead's Assets.

West alleges that, in 1993, Bruce Babbitt sold his interests in some of the Babbitt defendants to Ware Travelstead. (Am. Comp. ¶ 2.) In 1996, Travelstead filed for bankruptcy in the United States Bankruptcy Court for the District of Maryland. (Am. Compl. ¶ 7.) His chapter 11 proceeding is ongoing. (Am. Compl. ¶ 7.)

On December 31, 1997, as a part of the bankruptcy proceedings, the bankruptcy court appointed Joel Sher as the liquidating agent to sell Travelstead's assets. The same day, the court approved the reorganization plan. The order provides:

> ORDERED, that the rights, duties, and obligations of the Liquidating Agent, as defined in the Plan, shall be applicable ***to all of the assets of the estate, whether known or unknown***, until such time as the creditors are paid in full pursuant to the Plan.

(Dec. 31, 1997 Order, attached as Ex. A, at 3 (emphasis added).) The order prohibited Travelstead from transferring any asset of the bankruptcy estate without consent of the

---

[2] It bears noting that it will be impossible to record West's alleged shares in C.O. Ranch, Espee Ranch, and Cataract Ranch because these three "entities" are, in fact, merely descriptions of real property, not legal entities at all, let alone corporations. Moreover, the Babbitt defendants are not aware of any real property called "C.O. Ranch." They believe that West is referring to C.O. Bar Ranch, another non-entity.

- 3 -

Liquidating Agent:

> ORDERED, that the Debtor is prohibited from taking any action, or making any management decision relating to any business interest which is an asset of the estate without the prior consent of the Liquidating Agent.

(*Id.*) West alleges that his transaction with Travelstead is "carved out from and upon information and belief, not subject to that bankruptcy proceeding." (Am. Compl. ¶ 7.) West does not allege that the bankruptcy court or the Liquidating Agent approved of the transaction with Travelstead.[3] Curiously, West failed to join the Liquidating Agent in this action, although the Liquidating Agent has indicated that he intends to intervene.

### B. Fundamental Error #2: Travelstead Only Pledged Shares of C.O. Bar, Inc.

The Amended Complaint, by its own terms, flatly misstates what was purportedly pledged to West by Travelstead. West alleges that an assignment was made in the "Babbitt Interests" by the pledge attached as Exhibit A to the complaint. (Am. Compl. ¶ 3.) The two page Pledge of Shares of Stock only references a pledge of stock of C.O. Bar, Inc. There is no reference to any pledge being made in shares of Babbitt Ranches, LLC, C.O. Ranch, Espee Ranch, Cataract Ranch, or Babbitt Brothers Trading Company.

### C. Fundamental Error #3: West Never Obtained Possession of the C.O. Bar, Inc., Stock Certificates.

While West alleges that Travelstead pledged shares in the "Babbitt Interests,"

---

[3] It appears that West, Travelstead, or both, may be in violation of the automatic stay imposed by 11 U.S.C. § 362(a). Specifically, 11 U.S.C. § 362(a)(3) provides that the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The shares at issue in this action appear to have been property of the bankruptcy estate at the time Travelstead purported to assign them to West, and that the shares at issue continue to be property of the bankruptcy estate. Accordingly, both Travelstead and West have engaged or are engaging in unlawful attempts to exercise control over property of the bankruptcy estate in violation of the automatic stay.

there is no allegation in the Amended Complaint that Travelstead ever delivered any stock certificates to West, let alone those of C.O. Bar, Inc. As discussed below, without possession of the stock certificates, neither C.O. Bar, Inc. nor any other entity need recognize West as a shareholder.

## II. ARGUMENT.

### A. The Pledge of Shares of Stock Applies Only to C.O. Bar, Inc.

West alleges the "Babbitt Interests" "fail[ed] and refus[ed] to recognize the assignment of the Shares to Plaintiff and his rights as a shareholder." (Am. Compl. at ¶ 23.) But Travelstead's pledge only applies to C.O. Bar, Inc. -- not to Babbitt Ranches, L.L.C., Espee Ranch, C.O. Bar Ranch, Cataract Ranch, or Babbitt Brothers Trading Company.[4]

Distinct corporations are legally separate entities. *See, e.g., Bischofshausen v. D.W. Jacquays Mining & Equipment Contractors Co.*, 145 Ariz. 204, 209, 700 P.2d 902, 907 (App. 1985). Arizona law does not lightly disregard corporate form and separateness of business entities. *Chapman v. Field*, 124 Ariz. 100, 102, 602 P.2d 481, 483 (1979). Thus, a pledge agreement that purports to pledge shares of one entity does not apply to entities that are separate legal entities. The pledge agreement referenced in the amended complaint applies only to C.O. Bar, Inc. West has failed to allege that he has any interest in the remaining Babbitt defendants. West has no right to seek declaratory or injunctive relief recognizing his right to be a shareholder in Babbitt Ranches, LLC, C.O. Bar Ranch, Espee Ranch, Cataract Ranch, and Babbitt Brothers Trading Company.

---

[4] Without evidence of a written contract, the statute of frauds bars any claim that West might have in C.O. Bar Ranch, Espee Ranch, and Cataract Ranch, which are real property. *See* A.R.S. § 44-101(6).

- 5 -

### B. West Fails to State a Claim Against C.O. Bar, Inc. Because He Does Not Have Possession or Control of the Stock Certificates.

As a matter of black letter law, to effectuate a pledge of stock, the pledgee must acquire possession of the stock. As one commentator noted, "To constitute a valid pledge, possession of the property must be delivered to the pledgee. Possession must uniformly accompany a pledge. The right of the pledgee cannot otherwise be consummated." *Fletcher's Cyclopedia Corporations* § 5640 (4th ed.) (footnotes omitted). Without any allegation of possession of the stock certificates, West cannot seek a judicial declaration that he is to be recognized as a shareholder in C.O. Bar, Inc.

While the pledge agreement allegedly documents Travelstead's attempt to pledge "Stock Certificate No(s) 1, 2 and 3," West must "control" the stock certificates to exercise any rights as a shareholder in C.O. Bar, Inc. *See* Comment 1 to UCC §8-106; *see also* Comment 7 to UCC §8-106 ("The key to the control concept is that the purchaser has the ability to have the securities sold or transferred without further action by the transferor."). "Control" of certificated securities requires delivery to the purchaser *and* an indorsement *or* registration in the name of the purchaser. A.R.S. § 47-8106(B).

West does not allege that the stock certificates were ever delivered to him. Delivery of a certificated security occurs when either (1) the purchaser acquires physical possession of the certificates or (2) another person acquires or acknowledges possession on behalf of the purchaser. A.R.S. § 47-8301(A); *see also* Egon Guttman, *Modern Securities Transfers* (3d ed. 2004), §6:2 ("The essential element of a 'transfer' of a certificated security is a 'delivery' of the certificated security, i.e., a 'voluntary transfer of possession.'"). Enforceable pledge agreements must include *both* indorsement and delivery. *See* Comment 1 to UCC § 8-301; *see also Huffman v. Altec International, Inc.*, 546 N.W.2d 162, 165 (Wis. Ct. App. 1996) (describing the importance of

-6-

possession to pledge arrangements, "possession of the security by the pledgee . . . places the pledgee in the position where registration of transfer can be obtained if the pledgor defaults"). Absent physical delivery of the securities, "there will be insufficient ownership rights in the security to constitute legal authority in the transferee to exercise the rights of a shareholder." *Wagner v. Hart Chemical Co.*, 597 A.2d 1208, 1213 (Pa. Super. Ct. 1991). Here, the Complaint does not plead possession of the securities in either method permitted by A.R.S. §47-8301(A). West does not allege direct physical possession of the certificates, nor does he establish possession by an agent acting on his behalf. (*See* Am. Compl. ¶¶ 3, 15.)

Because West does not physically possess the stock certificates, C.O. Bar, Inc. cannot legally recognize and register his interests as a matter of law. A.R.S. § 47-8404(A)(1). Simply put, without possession of the share certificates, West cannot seek a judicial declaration that he is a shareholder.

C. **West Fails to State a Claim to Inspect Books and Records.**

In Third Claim for Relief, West seeks an inspection of the "Babbitt Interests'" books and records. To inspect the books and records of a corporation, one must be a shareholder. A.R.S. § 10-1602. As stated above, West is not a shareholder in any of the Babbitt defendants. Moreover, inspection of books and records only applies to corporations, meaning that West is not entitled to inspect the books and records of Babbitt Ranches, LLC, C.O. Ranch, Espee Ranch, and Cataract Ranch -- none of which is a corporation.[5]

Beyond these basic threshold issues, there are two additional prerequisites for being allowed to inspect books and records through a judicial order. First, West must make a request to the corporation under the following conditions:

---

[5] Inspection of the records of Babbitt Ranches, LLC is governed by A.R.S. § 29-607(B), which is more limited in scope than A.R.S. § 10-1602.

- 7 -

1. The shareholder's demand is made in good faith and for a proper purpose.

2. The shareholder describes with reasonable particularity its purpose and the records it desires to inspect.

3. The records are directly connected with the shareholder's purpose.

A.R.S. § 10-1602(C). A court-ordered inspection is only permitted where the corporation rejects a demand by a shareholder who complies with A.R.S. § 10-1602. A.R.S. § 10-1604(A). West fails to allege that he made any demand upon any of the Babbitt defendants, let alone any allegation that he made a demand with reasonable particularity. West also fails to allege that any of the Babbitt defendants denied his request to inspect books and records. In short, West fails to allege any of the statutory requirements that would entitle him to a judicial order that he be allowed to inspect any of the Babbitt defendants' books and records.

Second, to inspect books and records, West must be "a holder of record of shares" for at least six months preceding the demand or the holder of a five percent interest in the corporation. A.R.S. § 10-1602(A). West fails to allege that he fits in either category. He is not a holder of record of shares of any of the Babbitt defendants; indeed, that is the relief sought by West in this action. Moreover, West has failed to allege that the 524 shares that he purportedly owns in the "Babbitt Interests" constitute a five percent interest in any of the Babbitt defendants. Under either of the two categories provided in A.R.S. § 10-1602(A), West has no right to inspect the books and records of any of the Babbitt defendants. The Third Claim for Relief of the Amended Complaint too should be dismissed for failure to state a claim.

## III. CONCLUSION.

For the foregoing reasons, the Amended Complaint fails to state a claim for relief against any of the Babbitt defendants. Accordingly, the Court should grant the Babbitt defendants' motion to dismiss. Because West's claims arise from his contract with Travelstead, the Babbitt defendants respectfully request an award of their reasonable attorneys' fees under A.R.S. § 12-341.01(A).

DATED this 28th day of February, 2005.

SNELL & WILMER L.L.P.

By _____
Andrew F. Halaby
Todd Feltus
Nathan M. Smith
Attorneys for Defendants Babbitt Ranches, LLC;
C.O. Ranch; Espee Ranch; Cataract Ranch; Babbitt
Brothers Trading Company; and C.O. Bar, Inc.

ORIGINAL AND ONE COPY
of the foregoing filed this 28th day
of February, 2005.

COPY of the foregoing mailed this
28th day of February, 2005 to:

Richard M. Grimsrud, Esq.
P.O. Box 639
Flagstaff, AZ 86002
Attorney for Plaintiff

Joel I. Sher, Esq.
SHAPIRO, SHER, GUINOT & SANDLER
36 South Charles Street, Suite 2000
Baltimore, MD 21201

_____
1639102.4

- 9 -

Exh. A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

ENTERED
DEC 31 1997
CLERK'S OFFICE
U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

In re:

G. WARE TRAVELSTEAD

Debtor

Case No: 96-5-4979-SD

Chapter 11

### ORDER APPROVING DEBTOR'S MODIFIED FIFTH AMENDED DISCLOSURE STATEMENT AND CONFIRMING DEBTOR'S THIRD MODIFIED FOURTH AMENDED PLAN OF REORGANIZATION

G. Ware Travelstead (the "Debtor"), having filed a Second Modified Fourth Amended Plan of Reorganization (the "Second Modified Plan") and having previously filed a Modified Fifth Amended Disclosure Statement (the "Disclosure Statement"); the Debtor having timely served a copy of the Order Authorizing Distribution of Disclosure Statement and Fixing Time for Filing Objection to Disclosure Statement Combined with Hearing on Confirmation of Plan, Together with Notice of Hearing Thereon, the Disclosure Statement, the Second Modified Plan, and a Ballot for Acceptance or Rejection of the Second Modified Plan on all creditors, interest holders and parties in interest; objections to approval of the Disclosure Statement having been filed by Karen Hobson ("Hobson"), Virginia Kowalsky ("Kowalsky"), and Sir Norman Foster and Partners, Ltd. ("Foster"); objections to confirmation of the Second Modified Plan having been filed by Duker & Barrett, LLP ("Duker Barrett"), Hobson, and the Internal Revenue Service (the "IRS"), the IRS and Duker Barrett having withdrawn their objections to confirmation and indicated

their support for the Second Amended Plan pursuant to the provisions set forth below, and the Court having held a hearing on approval of the Disclosure Statement and confirmation of the Second Modified Plan on December 18, 1997, December 22, 1997, and December 29, 1997 (the "Combined Hearing"); and based upon the record of the Combined Hearing and the evidence presented at the Combined Hearing, the Creditors' Committee and the United States Trustee each having advised the Court that they are in support of the Second Modified Plan, the Court finding that adequate notice having been given in the Disclosure Statement pursuant to § 1125 of the Bankruptcy Code and, for reasons stated during the Combined Hearing, and apparent on the record herein, and that the requirements for confirmation set forth in 11 U.S.C. § 1129(a) and (b) of the Bankruptcy Code have been satisfied upon the Debtor making certain amendments to the Second Modified Plan; the Debtor having filed a Third Modified Fourth Amended Plan of Reorganization on December 30, 1997 pursuant to the Court's directive (the "Plan") that incorporates those amendments; and Karen L. Hobson's Opposition to Debtor's Third Modified Fourth Amended Plan of Reorganization having been considered; with the additional modifications herein, and for additional reasons stated in a supplemental memorandum, it is, this 31st day of December, 1997, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that the objections to the Disclosure Statement filed by Hobson, Kowalsky, and Foster be and they hereby are OVERRULED; and it is further

ORDERED, that the Disclosure Statement be and it hereby is approved; and it is further

ORDERED, that the objection to confirmation of the Plan filed by Hobson be and it hereby is OVERRULED; and it is further

2

ORDERED, that the Plan, as modified hereby, be and it hereby is confirmed; and it is further

ORDERED, that Section 13.6.1 of the Plan is stricken; and it is further

ORDERED, that any transfer of property by the Debtor or the Liquidating Agent pursuant to the Plan, including but not limited to the sale of any real property, and the making or delivery of an instrument of transfer, may not be taxed under any law imposing a stamp tax or similar tax as set forth in § 1146(c) of the Bankruptcy Code (11 U.S.C.); and it is further

~~ORDERED, that pursuant to §1141(b) of the Bankruptcy Code, the assets of the estate shall remain in the estate until all claims under the Plan have been satisfied, and thereafter, the assets will revest in the Debtor; and it is further~~ *PL*

ORDERED, that upon confirmation, subject to the provisions of the Plan and this Order, the Liquidating Agent shall have the right and standing to pursue and defend any claims or rights of action in respect of property of the estate or of the debtor; and it is further

ORDERED, that the rights, duties, and obligations of the Liquidating Agent, as defined in the Plan, shall be applicable to all of the assets of the estate, whether known or unknown, until such time as creditors are paid in full pursuant to the Plan and further that the Liquidating Agent is authorized to bring avoidance actions pursuant to §§ 542, 543, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code; and it is further

ORDERED, that the Debtor is prohibited from taking any action, or making any management decision, relating to any business interest which is an asset of the estate without the prior consent of the Liquidating Agent; and it is further

ORDERED, that the claim of Duker Barrett, to the extent that it is allowed and not paid from the collateral securing the Duker Barrett Class 5 claim, will be treated as a Class 6 unsecured claim; and it is further

ORDERED, that: a) Eduardo Canet ("Canet") shall have an allowed unsecured Class 6 Claim in the amount of $2,750,000; b) the Debtor shall dismiss with prejudice the appeal currently pending to the judgment obtained by Canet on May 7, 1997 in the United States District Court for the Eastern District of New York; and c) the lien which the Debtor previously obtained against real property owned by Canet in Remsenberg, New York shall be extinguished; and it is further

ORDERED, that the IRS shall be entitled to set off a 1992 income tax refund due to the Debtor in the amount of $45,048 (the "Refund") against the unsecured priority claim set forth in the proof of claim filed by the IRS on or about November 26, 1997 (the "IRS POC") with any balance of the Refund to be applied to the secured claim set forth in the IRS POC; and it is further

ORDERED, that the net proceeds from the sale of the Debtor's North Carolina real property (approximately $137,000), against which the IRS has a lien, shall be paid to the IRS within thirty (30) days of the Effective Date, to be applied to the secured claim set forth in the IRS POC, with any outstanding balance of said secured claim to be paid in full with interest at 9% within thirty (30) months after the Effective Date; and it is further

ORDERED, that all fees which are owed and unpaid by the debtor-in-possession to the U.S. Trustee, pursuant to 28 U.S.C. § 1930(a)(6), including but not limited to those fees which have accrued for the quarter in which the plan is confirmed, shall be paid in full, in cash, on or before the Effective Date of the Plan and in no event later than 30 days from confirmation; and it is further

4

ORDERED, that, except as provided in the Plan, as amended, the Debtor is hereby discharged from any debt, liability or claim that arose before entry of this Order to the extent provided pursuant to § 1141(d) of the Code; and it is further

ORDERED, that the Debtor shall mail a copy of this Order to all creditors, equity interest holders and parties in interest pursuant to Bankruptcy Rule 2002(f)(6) and file with the Court a certificate to that effect within five (5) business days of the entry of the Order.

E. Stephen Derby
Judge

cc: Stephen F. Fruin, Esquire
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Suite 1400
Baltimore, Maryland 21202

Office of the U.S. Trustee
300 West Pratt Street
Suite 350
Baltimore, Maryland 21201