PURCHASE, SALE AND SETTLEMENT AGREEMENT

THIS PURCHASE, SALE AND SETTLEMENT AGREEMENT (the "Agreement") is made as of this 29th day of July 2005, by and between **JOEL I. SHER, ESQUIRE** (the "Liquidating Agent"), in his capacity as Liquidating Agent for G. Ware Travelstead ("Debtor"), the Debtor in Case No. 96-5-4979-SD in the United States Bankruptcy Court for the District of Maryland Baltimore Division, and **ST. FRANCIS PROPERTY L.L.C.**, a limited liability company duly organized under the laws of the State of Arizona ("Buyer").

## RECITALS

A. The Debtor is the owner of (i) five hundred twenty-four (524) shares (the "Shares") of the common stock of C.O. Bar, Inc., an Arizona corporation, and (ii) five hundred twenty-four (524) units of ownership interest (the "Units") in Babbitt Ranches L.L.C., an Arizona limited liability company.

B. On or about May 31, 1996, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Bankruptcy Court").

C. On or about December 31, 1997, the Bankruptcy Court entered an order approving Debtor's Modified Fifth Amended Disclosure Statement and confirming Debtor's Third Modified Fourth Amended Plan of Re-organization, and authorizing the appointment of Joel I. Sher as Liquidating Agent for Debtor, with the responsibility and exclusive right, to, among other things, sell the Debtor's assets, including the Shares and the Units (collectively, the Shares and Units are referred to as the "Ownership Interests" which term is more full defined in Section 1 below). The Liquidating Agent has accepted his appointment and has and continues to liquidate the Debtor's assets.

D. The Liquidating Agent has engaged in extensive negotiations with the Buyer concerning the sale of the Shares and the Units, and believes that the terms and conditions stated herein are in the best interest of the Debtor's estate. The Liquidating Agent contends that he was not paid certain dividends in respect of the Ownership Interest which should have been paid to him.

E. Approval of the Bankruptcy Court is required as a condition to the sale of the Ownership Interests.

F. Subject to the approval of the Bankruptcy Court, the Liquidating Agent seeks to sell, transfer and convey to Buyer all of the Debtor's right, title and interest in and to the Ownership Interests upon the terms and conditions hereinafter set forth.

G. Larry West has, *inter alia*, asserted claims against the Ownership Interests (the "West Claims") pursuant to a lawsuit originally filed in the United States District Court for the District of Arizona, Prescott Division, Case No. 04-CV-2934 (the "District Court Litigation against the Debtor and Babbitt Ranches, LLC, C.O. Ranch, Espee Ranch, Cataract Ranch, Babbitt Brothers Trading Company and C.O. Bar, Inc. (collectively the "Babbitt Parties"). The sale of the Ownership Interests shall be free and clear of the West Claims.

H  The Liquidating Agent has filed a Motion to Dismiss or in the alternative to transfer venue of the District Court Litigation to the United States District Court for the District of Maryland. The Babbitt Parties have filed a Motion to Dismiss the District Court Litigation.

I. Buyer has acted in good faith in connection with this Agreement and this Agreement constitutes an arms' length transaction between the parties. Buyer is not an insider of the Debtor nor does Buyer have any relationship to the Liquidating Agent. The Order (defined below) shall contain language which provides that Buyer is entitled to the protection of §363(m) of the Bankruptcy Code.

AGREEMENT

In consideration of the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the parties hereto agree:

1. <u>Sale and Purchase</u>. The Liquidating Agent hereby agrees to sell, transfer and convey (or cause to be sold, transferred, and conveyed) the Ownership Interests to Buyer, and Buyer hereby agrees to purchase and accept the Ownership Interests from Liquidating Agent, for the Purchase Price.

"Ownership Interests" shall mean, collectively, (i) all of the Debtor's right, title and interest in and to the Shares, including all rights attached or attaching thereto, including, without limitation, the right to all dividends or other distributions declared, made or paid after Closing, and (ii) all of the Debtor' right, title and interest in and to the Units, including, without limitation, all rights attached or attaching

thereto, the right to all dividends or other distributions declared, made or paid hereinafter.

Buyer shall not assume or acquire any obligation or liability of the Debtor except, effective as of the Closing, the following:

(i) all obligations and liabilities accruing, arising out of, or relating to events or occurrences happening after the Closing and accruing, arising out of, or relating to Buyer's purchase and acceptance of the Ownership Interests; and

(ii) all obligations specifically undertaken by Buyer pursuant to this Agreement.

2. <u>Purchase Price</u>. The purchase price for the Ownership Interests (the "Purchase Price") shall be $262,000.00. The Purchase Price shall be paid to Liquidating Agent by Buyer as follows:

2.1. <u>Deposit</u>. Simultaneously with the execution and delivery of this Agreement by Buyer, Buyer shall deliver to Liquidating Agent, in immediately available funds, a cash deposit in the amount of $30,000 (the "Deposit"). The Deposit shall be held by the Liquidating Agent in a federally insured interest bearing account. Any interest that may accrue thereon shall be added to the Purchase Price and retained by the Liquidating Agent.

2.2. <u>Payment at Closing</u>. At the consummation of the transactions contemplated hereby (the "Closing"), Buyer shall deliver to the Liquidating Agent immediately available funds in an amount equal to the Purchase Price less the Deposit, and the Deposit (excluding any interest earned thereon) shall be applied by the Liquidating Agent as a credit against the Purchase Price.

2.3. <u>Additional Payments at Closing</u>. At Closing, the Buyer shall pay the Liquidating Agent (a) the sum of $38,645.00 in consideration of dividends arising out of the Ownership Interests but not previously paid to the Liquidating Agent and (b) the sum of $10,000 to defray the Liquidating Agent's legal fees incurred in the sale of the Ownership Interests.

3. <u>Representations and Warranties of Liquidating Agent</u>. Subject to the entry of an order of the Bankruptcy Court authorizing the sale of the Ownership Interests free and clear of all liens, claims and encumbrance, including but not limited to the West Claims, which order shall be in a form and substance acceptable to the Liquidating Agent and the Buyer (the

"Bankruptcy Court Order"), the Liquidating Agent is authorized to consummate the transaction contemplated hereby at Closing.

4. Closing Conditions.

4.1. Orders. The obligation of the Liquidating Agent and Buyer to perform and consummate the transactions described herein shall be subject to and contingent upon (i) the entry of the Bankruptcy Court Order, which order having become final and non-appealable, and (ii) entry of an order by a court of competent jurisdiction dismissing with prejudice the District Court Litigation against the Babbitt Parties, which order having become final and non-appealable, or (iii) entry of an order by a court of competent jurisdiction in favor of the Babbitt Parties in the District Court Litigation, which order having become final and non-appealable.

4.2. Performance of Obligations. The required performance of each party of the transactions described herein shall occur at Closing (as defined below) and are contingent upon the complete and timely performance, in all material respects, by the other party of each of such other party's obligations hereunder and upon the truth in all material respects of each of such other party's representations and warranties contained herein on and as of the Closing Date, as hereinafter defined, as if made on such date.

4.3. Purchase "As Is".

(a) Buyer acknowledges that it is purchasing the Ownership Interests "AS IS, WHERE IS" WITHOUT ANY WARRANTIES OR REPRESENTATIONS WHATSOEVER, EXPRESS OR IMPLIED. Neither the Liquidating Agent, nor any of his agents, representatives, attorneys or employees have made any representations or warranties, direct or indirect, oral or written, express or implied, to Buyer or any agents, representatives, attorneys or employees of Buyer with respect to the condition of the Ownership Interests, and Buyer is not aware of and does not rely upon any such representation to any other party. Any information, documents or materials which have been or hereafter are made available to Buyer are made available solely as an accommodation to Buyer in the conduct of its due diligence, and the Liquidating Agent makes no representation or warranty as to the accuracy thereof.

(b) Buyer agrees that neither the Liquidating Agent, the Debtor, the Debtor's bankruptcy estate, nor any of their respective agents, representatives, attorneys, or employees, shall have any liability, obligation, or responsibility of any

4

kind with regard to: (i) the content or accuracy of any appraisal, study, report, statement, representation, opinion, or conclusion of any person with respect to the Ownership Interests; (ii) the content or accuracy of any material given to Buyer by any of the foregoing parties, any other party or reviewed by Buyer with respect to the Ownership Interests; or (iii) the condition of or title to the Ownership Interests.

(c) To the fullest extent permitted by law, Buyer hereby fully and forever releases and discharges the Liquidating Agent, the Debtor, the Debtor's bankruptcy estate, and their respective agents, employees partners, representatives and attorneys (hereinafter collectively referred to as the "Released Parties") of and from any and all past, present, and future claims, damages, losses, warranties (express or implied), debts, liabilities, obligations, costs, expenses, demands, and causes of action of any kind or nature, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, fixed or contingent, matured or unmatured that Buyer has or may have or may claim to have, including without limitation, matters arising out of, relating to, or connected with any matters whatsoever that in any way relate to or arise out of the subject matter of this Agreement, except to the extent otherwise set forth herein.

4.4. <u>Ownership of Ownership Interests</u>. Upon delivery of the Ownership Interest to Buyer on the Closing Date, Buyer will acquire the Ownership Interests free and clear of all liens, claims, encumbrances and interests, including, but not limited to the West Claims.

5. <u>Failure of Conditions</u>. In the event any of the conditions precedent to the parties' obligations to consummate the transaction contemplated herein, other than the issuance of the Order, have not been satisfied at or before Closing, or the time of required performance, then each party shall have the option, exercisable by written notice to the other at or prior to Closing, of (1) waiving any unsatisfied condition precedent, other than the issuance of the Order, and proceeding to Closing, with no deduction from or adjustment of the Purchase Price, or (2) declining to proceed to Closing. In the latter event, except as expressly set forth herein, all obligations, liabilities and rights of the parties under this Agreement shall terminate, and the Deposit shall be returned to Buyer.

6. <u>Closing; Deliveries</u>.

6.1. <u>Time of Closing</u>. The Closing shall take place at 10:00 a.m. on the eleventh (11th) calendar day following the

Bankruptcy Court Order having becoming final and non-appealable. Closing shall occur at the offices of the Liquidating Agent, unless otherwise agreed to in writing by both the Liquidating Agent and Buyer; provided, however, that if the Bankruptcy Court Order is not entered within one hundred eighty (180) days following the date hereof, the Liquidating Agent may, thereafter, by written notice to Buyer, terminate this Agreement. In the event that the Bankruptcy Court Order has not become final and non-appealable one (1) year from the date of this Agreement, this Agreement shall terminate, and the deposit shall be returned to Buyer except in the event that the Bankruptcy Court Order is not obtained due to Buyer's default of this Agreement.

    6.2.  Liquidating Agent Deliveries. At Closing, the Liquidating Agent shall deliver to Buyer (i) an Assignment of the Ownership Interests and (ii) the Orders required by Section 4.1 of this Agreement.

    6.3. Buyer Deliveries. At Closing, Buyer shall deliver to the Liquidating Agent the balance of the Purchase Price (subject to adjustments, if any, provided for in this Agreement).

    6.3.2.  All other instruments and documents requested by the Liquidating Agent reasonably necessary to effectuate this Agreement and the transactions contemplated thereby.

    7.  Apportionments; Taxes; Expenses.

    7.1.  Apportionments.  Any and all taxes and other liabilities respecting the Ownership Interests shall be prorated on a per diem basis as of the date of Closing. If any such amounts cannot conclusively be determined as of the date of Closing, then they shall be adjusted at Closing based upon the most recently issued bills thus far. From and after Closing all such amounts shall be paid by Buyer.

    7.2. Expenses. Except as expressly set forth in this Agreement, each party will pay all its own expenses incurred in connection with this Agreement and the transactions contemplated hereby. Buyer, in addition to its other expenses, shall pay at Closing (1) any and all tax liability arising out of or incurred in connection with the transactions contemplated by this Agreement, and (2) any and all of the fees, costs and expenses arising out of or incurred in connection with any and all governmental approvals (other than the Order) which may be

required in connection with the transactions contemplated by this Agreement.

8. <u>Remedies</u>.

8.1. <u>Buyer Default</u>. If all conditions precedent to Buyer's obligation to purchase the Ownership Interests have been satisfied, and Buyer breaches or fails to complete the purchase of the Ownership Interests or, following five (5) days' written notice from Liquidating Agent, Buyer fails to perform its obligations under this Agreement, then the Liquidating Agent shall be entitled to exercise any and all rights at law or equity and to seek any and all remedies to which the Liquidating Agent may be entitled including, without limitation, forfeiture of the Deposit as partial liquidated damages (and not as a penalty) and/or a suit for damages and/or to compel Buyer to specifically perform this Agreement.

8.2. <u>Liquidating Agent Default</u>. If all conditions precedent to the Liquidating Agent's obligation to sell the Ownership Interests have been satisfied, and the Liquidating Agent breaches or fails to complete the sale of the Ownership Interests or, following five (5) days' written notice from Buyer, the Liquidating Agent fails to perform his obligations under this Agreement, Buyer may, as its sole remedy therefore, terminate this Agreement and obtain a refund of the Deposit. In no event shall Buyer be entitled to seek or obtain any other damages of any kind, including, without limitation, consequential, indirect or punitive damages from the Liquidating Agent or the Debtor's bankruptcy estate.

9. <u>Notices</u>. All notices and other communications provided for herein shall be in writing and shall be sent to the address set forth below (or such other address as a party may hereafter designate for itself by notice to the other parties as required hereby) of the party for whom such notice or communication is intended:

9.1. If to Liquidating Agent:

Joel I. Sher, Esquire
Liquidating Agent
Shapiro Sher Guinot & Sandler
36 South Charles Street
20th Floor
Baltimore, Maryland 21201

With a copy to:

7

>Shapiro Sher Guinot & Sandler
>36 South Charles Street
>20th Floor
>Baltimore, Maryland 21201
>Attn: Richard M. Goldberg, Esquire

9.2. If to Buyer:

>c/o Hufford, Horstman, Mongini, Parnell, & McCarthy, PC
>120 N. Beaver Street
>P.O. Box B
>Flagstaff, Arizona 86002
>Attn: Michael E.J. Mongini, Esquire

Any such notice or communication shall be sufficient if sent by registered or certified mail, return receipt requested, postage prepaid; by hand delivery with a receipt; or by overnight courier service. Any such notice or communication shall be effective when the return receipt is executed or when delivery is refused.

10. <u>Brokers</u>. Buyer and Liquidating Agent each represents to the other that it has not dealt with any broker, finder, or other agent in connection with this transaction. Each party hereby indemnifies and holds harmless the other party from all loss, cost and expense (including reasonable attorneys' fees) arising out of a breach of its representation or undertaking set forth in this Section. The provisions of this Section shall survive Closing or the termination of this Agreement.

11. <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants that:

11.1. <u>Authority</u>. Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Arizona, and has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. The execution and delivery of this Agreement by Buyer has been duly authorized.

11.2. <u>No Conflict</u>. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereunder on the part of Buyer does not and will not violate any applicable law, ordinance, statute, rule, regulation, order, decree or judgment, conflict with or result in the breach of any material terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien, charge, or

8

encumbrance upon any of the property or assets of the Buyer by reason of the terms of any contract, mortgage, lien, lease, agreement, indenture instrument or judgment to which Buyer is a party or which is or purports to be binding upon Buyer or which otherwise affects Buyer, which will not be discharged, assumed or released at Closing. No action by any federal, state or municipal or other governmental department, commission, board, bureau or instrumentality is necessary to make this Agreement a valid instrument binding upon Buyer in accordance with its terms.

11.3 <u>Financial Ability</u>. Buyer has the financial resources to consummate the transaction contemplated hereby, is solvent, and has not made a general assignment for the benefit of its creditors or been adjudicated a bankrupt or insolvent, nor has a receiver, liquidator, or trustee of Buyer or any of Buyer's assets been appointed or a petition filed by or against Buyer for bankruptcy, reorganization, or arrangement pursuant to the federal Bankruptcy Code or any similar federal or state statute, or any proceeding instituted for the dissolution or liquidation of Buyer.

12. <u>Miscellaneous</u>.

12.1. <u>Assignability</u>. Buyer may not assign or transfer all or any portion of its rights or obligations under this Agreement to any other individual, entity or other person without the consent thereto by Liquidating Agent.

12.2. <u>Governing Law; Bind and Inure</u>. This Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles, and the applicable provisions of the Bankruptcy Code, and shall bind and inure to the benefit of the parties hereto and their respective heirs, successors, and permitted assigns.

12.3. <u>Recording</u>. This Agreement or any notice or memorandum hereof shall not be recorded in any public record, except in filings with the Bankruptcy Court or other court of competent jurisdiction.

12.4. <u>Time of the Essence</u>. Time is of the essence of this Agreement.

12.5. <u>Headings</u>. The headings preceding the text of the paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

9

12.6. Counterparts. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.7. Exhibits. All Exhibits which are referred to herein and which are attached hereto or bound separately and initialed by the parties are expressly made and constitute a part of this Agreement.

12.8. Survival. All obligations and covenants of Liquidating Agent contained herein shall not survive Closing.

12.9. Entire Agreement; Amendments. This Agreement and the Exhibits hereto set forth all of the promises, covenants, agreements, conditions and undertakings between the parties hereto with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as contained herein. This Agreement may not be changed orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent or discharge is sought.

12.10. Further Assurances. The parties agree to act in good faith and to properly and fully execute in a timely manner any and all documents necessary to carry out the terms and intent of this Agreement. The parties shall also, at all times in the future, upon the request of the other, execute and deliver to the other all additional and further assurances of any nature which may be reasonably necessary to fully consummate and carry out the term and intent of this Agreement. However, nothing contained in this Section shall require either party to assume any liability or expense not expressly required by the terms of this Agreement. This Agreement shall be deemed to have been drafted by both parties and, in the event of a dispute, shall not be construed against either party as draftor.

12.11. Performance on Saturdays, Sundays and Holidays. Whenever the date fixed for the payment of funds, the giving of notice, or the performance of any other provision of this Agreement falls on a Saturday, Sunday, legal holiday or any day on which banking institutions in the city of payment or performance are authorized by law to close, then such payment, notice or performance need not be made on such date, but shall be made on the next succeeding business day with the same force and effect as if made on the date fixed (and, as to payments, no additional

interest shall accrue on such payment if payment is made on such next succeeding business day).

13.12. Jurisdiction; Venue; Waiver of Jury Trial. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any matter arising from or relating to the sale of the Ownership Interests and the enforcement of any rights and remedies of Liquidating Agent or Buyer hereunder and Buyer hereby consents to such jurisdiction. If the Bankruptcy Court has no jurisdiction then the parties hereby submit to the exclusive jurisdiction and venue of the United States District Court for the District of Maryland. The parties hereby waive all rights to a jury trial.

13. Special Clauses.

13.1 Conflicts with the Order. In the event of any material conflict or inconsistency exists between the provisions of this Agreement and the Order, the provisions of the Order shall govern and control.

13.2. Agreement Subject to Higher and Better Offers. Buyer and Liquidating Agent acknowledge and agree that this Agreement is subject to higher and better offers and approval of the Bankruptcy Court pursuant to such bidding procedures and orders of the Bankruptcy Court as the Liquidating Agent, in his sole and absolute discretion, may seek and obtain from the Bankruptcy Court.

[SIGNATURES APPEAR ON THE NEXT PAGE]

   IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date first above written.

WITNESS/ATTEST:       SELLER:

*Ann Lawrence*         *Joel N. Sr*
               Joel I. Sher, Esquire
               Liquidating Agent

               BUYER:

               ST. FRANCIS PROPERTY, L.L.C.

               By: _____
               Name: William C. Cordasco
               Title: MANAGER

12