IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| **G. WARE TRAVELSTEAD,** | * | Case No. 96-5-4979-SD |
| | | (Chapter 11) |
| Debtor. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MOTION OF LIQUIDATING AGENT FOR AUTHORITY TO SELL INTERESTS IN AND ASSOCIATED WITH TRADEMARKS OF THE TRAVELSTEAD GROUP, INC.

Joel I. Sher, Liquidating Agent, by his undersigned counsel, pursuant to sections 363(b) and (f) of the Bankruptcy Code and the confirmed Third Modified Fourth Amended Plan of Reorganization, moves for authority to sell all of the Debtor's right, title and interests in and associated with trademarks owned by The Travelstead Group, Inc. and, in support thereof, states:

1. On December 31, 1997, this Court entered the Order (the "Confirmation Order") Approving Debtor's Modified Fifth Amended Disclosure Statement and Confirming the Debtor's Third Modified Fourth Amended Plan of Reorganization (the "Plan").

2. On that same date, the Bankruptcy Court entered an order authorizing the appointment of Joel I. Sher as the liquidating agent. Furthermore, section 6.1 of the Plan appoints Joel I. Sher as the liquidating agent (the "Liquidating Agent").

3. Pursuant to the Confirmation Order, the Liquidating Agent has "the right and standing to pursue and defend any claims or rights of action in respect of the property of the estate or of the debtor." *Confirmation Order* at 3. The Plan further grants the Liquidating Agent, *inter alia*, "all of the rights, duties, obligations, and powers of a trustee including, but not limited to those set forth in §§704(1) and 1106 of the Bankruptcy Code." *Plan* at Article 6.5(a). The Liquidating Agent is to continue in this capacity "until the distributions to all creditors of all

payments required under the Plan are completed and the case is closed." *Plan* at Article 6.3. Distributions to creditors have not been completed and the case has not been closed.

4. The Confirmation Order modified, in part, the terms of the Plan to insure that the Liquidating Agent's authority would extend to all assets which Travelstead owned, either directly or indirectly, as of the petition date of May 31, 1996. In that regard the Confirmation Order provides "….that the rights, duties and obligations of the Liquidating Agent, as defined in the Plan, shall be applicable to all of the assets of the estate, whether known or unknown, until such time as creditors are paid in full pursuant to the Plan….." *Confirmation Order* at 3.

5. By this motion, the Liquidating Agent seeks to sell all of the Debtor's right, title and legal interest in certain trademarks owned by the Debtor and/or two entities in which the Debtor has direct and/or indirect ownership, The Travelstead Group, Inc. (the "Group") and Travelstead Barcelona Limited Partnership ("TBLP"), pursuant to a certain Purchase and Sale Agreement ("PSA"), a copy of which is attached hereto as Exhibit A.

## The Trademarks and License Agreement

6. The Group is the owner of the following three (3) design trademarks, all registered with the Registro de la Propiedad Industrial España in Spain: (i) "Arts Barcelona" Serial Number 1.609.204; (ii) "Arts" Serial Number 1.609.205; and (iii) "Hotel Arts Barcelona" Serial Number 1.630.906 (collectively referred to herein as the "Trademarks").

7. In conjunction with the 1982 Olympics, the Debtor was selected to design and develop various commercial and retail establishments on the ocean front in Barcelona, Spain (the "Project"), including most notably the Hotel Arts (the "Hotel"), which to this day continues to be one of Europe's most prestigious resort properties. In 1993, the Group, the Debtor, and TBLP entered into a License Agreement with T-S Barcelona Partners, L.P. ("Barcelona Partners") and

USA Sogo, Inc. ("USA Sogo") (together with Barcelona Properties, the "Licensees"), majority owners of the of Hotel de la Villa Olympica, S.A ("Hovisa"), a Spanish corporation which controls and owns the Hotel. A copy of the License Agreement is attached hereto as Exhibit B. The License Agreement granted the Licensees a perpetual right to use the Trademarks, but only in conjunction with the Project.

8. Hovisa now wishes to acquire the Trademarks so that it may use the Trademarks for other business interests for which it is not now licensed. Given the unique and restrictive nature of the Trademarks and limited pool of interested purchasers, the Liquidating Agent believes that pursuing the sale to Hovisa as set forth in the PSA is in the best interests of the estate.

## The Purchase Agreement

9. As stated in the PSA, the Trademarks will be sold to Hovisa for One Hundred Thousand Dollars ($100,000.00 USD), to be delivered to the Liquidating Agent in immediately available funds upon closing, which is scheduled to occur on or before June 30, 2006 (the "Closing Date"), subject to prior approval by this Court. As part of the purchase, Hovisa shall not assume or acquire any obligation or liability of the Group except (i) all obligations and liabilities accruing, arising out of, or relating to events or occurrences happening after the Closing and accruing, arising out of, or relating to Hovisa's purchase and acceptance of the Trademarks; (ii) all obligations contained in the February 25, 1993 License Agreement; and (iii) all obligations specifically undertaken by Hovisa pursuant to the PSA. In addition, the PSA provides that Hovisa will acquire the Trademarks free and clear of all liens, claims, encumbrances and interests, but subject to the terms of the License Agreement.

10. The sale of the Trademarks is "as is, where is" with no warranties or representations, either express or implied. Under the PSA, Hovisa agrees to grant the the Liquidating Agent and the Debtor's bankruptcy estate a full release of and from any and all claims arising out of or related to the Trademarks.

11. Each party to the PSA will pay all its own expenses incurred in connection with the execution of the PSA, except that Hovisa shall be responsible for any and all filing and/or transfer fees required by any governmental agencies.

### Fulfillment of Obligations of Liquidating Agent Under Letter of Intent

12. In order to fulfill his obligations under the PSA, the Liquidating Agent requires all the rights and powers that the Debtor has as the direct and/or indirect owner of the Group and TBLP, including, but not limited to, the right to vote the Debtor's shares of the Group and TBLP at any meetings of shareholders required to consider the transaction proposed in the PSA, or otherwise act in accordance with the PSA. In addition, in order to comply with the laws of Spain, the Liquidating Agent will need a decree of this Court granting the Liquidating Agent a power of attorney which authorizes him to act in the place of and on behalf of the Debtor, such that the Liquidating Agent can execute all documents necessary to effectuate closing under applicable Spanish law.

13. That the Liquidating Agent would succeed to the Debtor's rights, including his rights as a shareholder (such as obtaining the Debtor's proxy) was contemplated during the plan confirmation process and agreed upon by the Debtor. When questioned at the confirmation hearing whether the Debtor would be willing to give his proxy to the Liquidating Agent in order to effect a sale, the Debtor responded:

> It depends on the timing that you would be talking about. One of the reasons to have -- in my understanding, in my approach to life, one of the

> reasons to have the liquidating agent and I there together is to take the onus off these assets so that the assets can be marketed without an immediate shadow hanging over them and people circling around trying to get distressed prices. So one of the things that was very important to me in the Plan was to maintain a relationship so that the outside world can understand that there is not going to be any fire sale taking place here tomorrow or the next day. So if the Liquidating -- if, for example I just gave a blanket proxy to the Liquidating Agent right now over the shares, I don't think that would be in the best interest of the value of the shares and so forth because I think that would send a signal out that may depreciate the value. *And I think -- but if push comes to shove and I don't want to do something and Mr. Sher thinks that it should be done, that's the way I would affect it. I would give him my proxy and he could go to the meeting and vote my shares.*

*Transcript of 12/22/97 Confirmation Hearing,* at 77 (emphasis added).

14. Thus, the Liquidating Agent seeks the authority to stand in the shoes of the Debtor, and to be granted and endowed with all of the Debtor's rights and powers appurtenant to his direct and/or indirect ownership of entities, including, without limitation, a power of attorney-in-fact or proxy to vote the Debtor's shares at any meeting of shareholders.

15. To consummate the sale, the Liquidating Agent requests the authority to take any and all actions as may be necessary and appropriate to effectuate the terms of the sale and the PSA, including, but not limited to, executing and delivering in the name of the Debtor as his attorney-in-fact any and all documents, instruments of transfer, conveyance documents and other documents required by the laws of the United States of America and Spain, both before and after closing.

### **Benefit to the Bankruptcy Estate**

16. The approval of this motion authorizing the sale is in the best interest of creditors and this bankruptcy estate because, *inter alia*, (i) the purchase price is a reasonable offer for the Trademarks being purchased, and (ii) the net proceeds of the transaction will enable the Liquidating Agent to make further distributions in accordance with the Plan.

5

17. The Liquidating Agent has undertaken an analysis of the value of the Trademarks. In that regard, the Liquidating Agent has, *inter alia*, (i) engaged in extensive discussions with Hovisa, (ii) consulted with the Debtor's professionals, and (iii) made such additional inquiries as he deemed prudent.

18. The offer set forth in the PSA is squarely within the range of the amount that the Liquidating Agent believes is reasonable and is in the best interest of creditors of the Debtor's estate.

### Sale Free and Clear of Liens, Claims or Interests

19. Pursuant to Section 363(b)(1) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell or lease property of the estate other than in the ordinary course of business. Pursuant to Section 363(f) of the Bankruptcy Code, a trustee may sell property free and clear of any interest in such property of an entity other than the estate. However, in the instant case, neither the Liquidating Agent nor Hovisa has notice or knowledge of any liens, claims or encumbrances on the Trademarks. The sale to Hovisa is an arms-length transaction for valuable consideration entered into in good faith after extensive negotiations between the parties. Thus, Hovisa is entitled to the protections afforded under §363(m) of the Bankruptcy Code.

### Conclusion

20. The Liquidating Agent believes that the sale of the Trademarks to Hovisa pursuant to the PSA is in the best interest of creditors.

WHEREFORE, for the foregoing reasons, Joel I. Sher, Liquidating Agent, respectfully requests the following relief:

A. That the Motion be granted;

B. That the Order in the form submitted herewith be approved;

C.  That the Liquidating Agent be authorized under 11 U.S.C. §363 to sell the Trademarks to Hotel de la Villa Olympica, S.A pursuant to the PSA in exchange for the consideration set forth in the PSA;

D.  That the Liquidating Agent be authorized to take any and all actions as may be necessary and appropriate to effectuate the terms of the PSA, to settle in connection with the PSA and to consummate the transactions contemplated therein, including, without limitation, executing and delivering in the name of the Debtor as his attorney-in-fact any and all documents, instruments of transfer, conveyance documents and other documents, both before and after closing, necessary to consummate and settle the PSA and the transactions contemplated thereby;

E.  That the Liquidating Agent be authorized, as needed, to stand in the shoes of the Debtor, and be granted and endowed with all the Debtor's rights and powers appurtenant to the Debtor's direct and/or indirect ownership interests; and

F.  That the Liquidating Agent be granted such other and further relief as is just and equitable.

/s/     Joel I. Sher
Joel I. Sher, Bar No. 00719
Shapiro Sher Guinot & Sandler
36 South Charles Street
20th Floor
Baltimore, Maryland 21201
410-385-0202

*Attorneys for the Liquidating Agent*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 22nd day of May, 2006, a copy of the foregoing was served by first-class mail, postage prepaid, on the following:

>Javier Faus Santasusana, Esquire
>Edificio "Blue Building" Av. Litoral Mar, 12-14, 1º
>08005, Barcelona Spain
>
>Edward T. McDermott, Esquire
>Pollack & Kaminsky
>114 West 47th Street, 19th Floor
>New York, NY  10036
>
>Paul M. Nussbaum, Esquire
>Stephen F. Fruin, Esquire
>Whiteford, Taylor & Preston
>7 St. Paul Street
>Baltimore, MD  21202-1626
>
>Mark A. Neal, Esquire
>Assistant U.S. Trustee
>Office of the United States Trustee
>300 West Pratt Street, Suite 350
>Baltimore, MD   21201

>/s/      Joel I. Sher
>Joel I. Sher