# Exhibit A

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (the "Agreement") is made as of this 19th day of May 2006, by and between Joel I. Sher, Esquire (the "Liquidating Agent"), in his capacity as Liquidating Agent for G. Ware Travelstead ("Debtor"), the Debtor in Case No. 96-5-4979 SD in the United States Bankruptcy Court for the District of Maryland Baltimore Division, and Hotel de la Villa Olimpica, S.A., a company duly organized under the laws of Spain ("Buyer").

<u>RECITALS</u>

A.     On or about May 31, 1996, Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland, Northern Division (the "Bankruptcy Court").

B.     Debtor owns one hundred percent (100%) of The Travelstead Group, Inc., a New York corporation (the "Group").

C.     The Group is the owner of the following three (3) design trademarks, all registered with the Registro de la Propiedad Industrial España in Spain: (i) "Arts Barcelona" Serial Number 1.609.204; (ii) "Arts" Serial Number 1.609.205; and (iii) "Hotel Arts Barcelona" Serial Number 1.630.906 (collectively referred to herein as the "Trademarks").

D.     On or about December 31, 1997, the Bankruptcy Court entered an order approving Debtor's Modified Fifth Amended Disclosure Statement and confirming Debtor's Third Modified Fourth Amended Plan of Re-organization, and authorizing the appointment of Joel I. Sher as Liquidating Agent for Debtor, with the responsibility and exclusive right, to, among other things, sell all of the Debtor's property, either directly or indirectly owned, including, but not limited to the Trademarks. The Liquidating Agent has accepted his appointment and has and continues to liquidate the Debtor's property.

E.     The Liquidating Agent has engaged in extensive negotiations with the Buyer concerning the sale of the Trademarks, and believes that the terms and conditions stated herein are in the best interest of the Debtor's estate.

F.     Approval of the Bankruptcy Court is required as a condition to the sale of the Trademarks and the obligations of the parties hereunder.

G.     Subject to the approval of the Bankruptcy Court, the Liquidating Agent shall sell, transfer and convey to Buyer all of the Group's right, title and interest in and to the Trademarks upon the terms and conditions hereinafter set forth.

H.     Buyer has acted in good faith in connection with this Agreement and this Agreement constitutes an arms' length transaction between the parties. Buyer is not an insider of the Debtor nor does Buyer have any relationship to the Liquidating Agent. The Bankruptcy Court Order (as defined below) shall contain language which provides that Buyer is entitled to the protection of §363(m) of the Bankruptcy Code.

1



<u>AGREEMENT</u>

In consideration of the mutual covenants and agreements herein contained, and intending to be legally bound hereby, the parties hereto agree:

1.      <u>Sale and Purchase</u>. The Liquidating Agent hereby agrees to sell, transfer and convey the Trademarks to Buyer, and Buyer hereby agrees to purchase and accept the Trademarks from Liquidating Agent, for the Purchase Price.

Buyer shall not assume or acquire any obligation or liability of the Group except, effective as of the Closing, the following:

(i)      all obligations and liabilities accruing, arising out of, or relating to events or occurrences happening after the Closing and accruing, arising out of, or relating to Buyer's purchase and acceptance of the Trademarks; and

(ii)      all obligations contained in the February 25, 1993 License Agreement by and among the Group, Debtor, Travelstead Barcelona Limited Partnership, USA Sogo, Inc., and T-S Barcelona Partners, L.P. (the "License Agreement"); and

(ii)      all obligations specifically undertaken by Buyer pursuant to this Agreement.

2.      <u>Purchase Price</u>. The purchase price for the Trademarks (the "Purchase Price") shall be One Hundred Thousand Dollars ($100,000.00 USD). At the Closing (as defined below), Buyer shall deliver to the Liquidating Agent immediately available funds in an amount equal to the Purchase Price.

3.      <u>Representations and Warranties of Liquidating Agent</u>. Subject to the entry of an order of the Bankruptcy Court authorizing the sale of the Trademarks free and clear of all liens, claims and encumbrance, which order shall be in a form and substance acceptable to the Liquidating Agent and the Buyer, the Liquidating Agent is authorized to consummate the transactions contemplated hereby at Closing.

4.      <u>Representations and Warranties of Buyer</u>. Buyer represents and warrants that:

4.1.      <u>Authority</u>. Buyer is a company, duly organized, validly existing and in good standing under the laws of Spain, and has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. The execution and delivery of this Agreement by Buyer has been duly authorized.



2

4.2. <u>No Conflict</u>. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereunder on the part of Buyer does not and will not violate any applicable law, ordinance, statute, rule, regulation, order, decree or judgment, conflict with or result in the breach of any material terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien, charge, or encumbrance upon any of the property or assets of the Buyer by reason of the terms of any contract, mortgage, lien, lease, agreement, indenture instrument or judgment to which Buyer is a party or which is or purports to be binding upon Buyer or which otherwise affects Buyer, which will not be discharged, assumed or released at Closing. No action by any federal, state or municipal or other governmental department, commission, board, bureau or instrumentality is necessary to make this Agreement a valid instrument binding upon Buyer in accordance with its terms.

5.    <u>Closing Conditions</u>.

5.1.    <u>Order</u>. The obligation of the Liquidating Agent and Buyer to perform and consummate the transactions described herein shall be subject to and contingent upon the entry of the Bankruptcy Court Order, which order having become final and non-appealable.

5.2.    <u>Performance of Obligations</u>. The required performance of each party to the transactions described herein shall occur at Closing and is contingent upon the complete and timely performance, in all material respects, by the other party of each of such other party's obligations hereunder and upon the truth in all material respects of each of such other party's representations and warranties contained herein on and as of the Closing Date, as hereinafter defined, as if made on such date.

5.3.    <u>Purchase "As Is"</u>.

(a) Buyer acknowledges that it is purchasing the Trademarks "AS IS, WHERE IS" WITHOUT ANY WARRANTIES OR REPRESENTATIONS WHATSOEVER, EXPRESS OR IMPLIED. Neither the Liquidating Agent, nor any of his agents, representatives, attorneys or employees have made any representations or warranties, direct or indirect, oral or written, express or implied, to Buyer or any agents, representatives, attorneys or employees of Buyer with respect to the condition of the Trademarks, and Buyer is not aware of and does not rely upon any such representation to any other party. Any information, documents or materials which have been or hereafter are made available to Buyer are made available solely as an accommodation to Buyer in the conduct of its due diligence and the Liquidating Agent makes no representation or warranty as to the accuracy thereof.

(b) Buyer agrees that neither the Liquidating Agent, the Group, the Debtor, the Debtor's bankruptcy estate, nor any of their respective agents, representatives, attorneys, or employees, shall have any liability, obligation, or responsibility of any kind with regard to: (i) the content or accuracy of any appraisal, study, report, statement, representation, opinion, or conclusion of any person with respect to the Trademarks; (ii) the content or accuracy of any material given to Buyer by any of the foregoing parties, any other party or reviewed by Buyer with respect to the Trademarks; or (iii) the condition of or title to the Trademarks.



3

(c) To the fullest extent permitted by law, Buyer hereby fully and forever releases and discharges the Liquidating Agent and the Debtor's bankruptcy estate, and their respective agents, employees, partners, representatives and attorneys (hereinafter collectively referred to as the "Released Parties") of and from any and all past, present, and future claims, damages, losses, warranties (express or implied), debts, liabilities, obligations, costs, expenses, demands, and causes of action arising out of or related to the Trademarks, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, fixed or contingent, matured or unmatured that Buyer has or may have or may claim to have, except to the extent otherwise set forth herein.

5.4.    Ownership of Trademarks. Upon delivery of the Trademarks to Buyer on the Closing Date, Buyer will acquire the Trademarks free and clear of all liens, claims, encumbrances and interests, but subject to the terms and conditions of the License Agreement.

6.    Failure of Conditions. In the event any of the conditions precedent to the parties' obligations to consummate the transaction contemplated herein have not been satisfied at or before Closing, or the time of required performance, then each party shall have the option, exercisable by written notice to the other at or prior to Closing, of (1) waiving any unsatisfied condition precedent, other than the issuance of the Bankruptcy Court Order, and proceeding to Closing, with no deduction from or adjustment of the Purchase Price, or (2) declining to proceed to Closing. In the latter event, except as expressly set forth herein, all obligations, liabilities and rights of the parties under this Agreement shall terminate.

7.    Closing; Deliveries.

7.1.    Time of Closing. The Closing shall take on or before June 30, 2006 (the "Closing"). The Closing shall occur at a site to be mutually agreed upon by the Liquidating Agent and Buyer; provided, however, that if the Bankruptcy Court Order is not entered by said date, either party by written notice to the other may terminate this Agreement.

7.2.    Liquidating Agent Deliveries. At Closing, the Liquidating Agent shall deliver to Buyer (i) an Assignment of the Trademarks in substantially the form of Exhibit A; (ii) the Bankruptcy Court Order required by Section 5.1 of this Agreement and (iii) The Bankruptcy Court Order authorizing the appointment of Joel I. Sher as Liquidating Agent of the Debtor.

7.3    Buyer Deliveries. At Closing, Buyer shall deliver to the Liquidating Agent (i) the Purchase Price and (ii) all other instruments and documents requested by the Liquidating Agent reasonably necessary to effectuate this Agreement and the transactions contemplated hereby.

8.    Expenses. Except as expressly set forth in this Agreement, each party will pay all its own expenses incurred in connection with this Agreement and the transactions contemplated hereby; provided, however, that Buyer shall be responsible for any and all filing and/or transfers fees required by the Registro de la Propiedad Industrial España or any other governmental or other agency in connection with this transaction.

4



9.    Remedies.

9.1.    Buyer Default. If all conditions precedent to Buyer's obligation to purchase the Trademarks have been satisfied and Buyer breaches or fails to complete the purchase of the Trademarks or, following five (5) days' written notice from Liquidating Agent, Buyer fails to perform its obligations under this Agreement, then the Liquidating Agent shall be entitled to terminate this Agreement.

9.2.    Liquidating Agent Default. If all conditions precedent to the Liquidating Agent's obligation to sell the Trademarks have been satisfied, and the Liquidating Agent breaches or fails to complete the sale of the Trademarks or, following five (5) days' written notice from Buyer, the Liquidating Agent fails to perform his obligations under this Agreement, Buyer may, as its sole remedy therefore, terminate this Agreement. In no event shall Buyer be entitled to seek or obtain any other damages of any kind, including, without limitation, consequential, indirect or punitive damages from the Liquidating Agent, the Group, the Debtor, or the Debtor's bankruptcy estate.

10.    Notices. All notices and other communications provided for herein shall be in writing and shall be sent to the address set forth below (or such other address as a party may hereafter designate for itself by notice to the other parties as required hereby) of the party for whom such notice or communication is intended:

10.1    If to Liquidating Agent:

Joel I. Sher, Esquire
Liquidating Agent
Shapiro Sher Guinot & Sandler
36 South Charles Street
20th Floor
Baltimore, Maryland 21201

With a copy to:
Shapiro Sher Guinot & Sandler
36 South Charles Street
20th Floor
Baltimore, Maryland 21201
Attn: Richard M. Goldberg, Esquire

10.2    If to Buyer:

Hotel de la Villa Olimpica, S.A.
"Blue Building"
Avinguda Litoral Mar, 12-14, 1º
08005 Barcelona
SPAIN
Attn: Javier Faus Santasusana

5

Any such notice or communication shall be sufficient if sent by registered or certified mail, return receipt requested, postage prepaid; by hand delivery with a receipt; or by overnight courier service. Any such notice or communication shall be effective when the return receipt is executed or when delivery is refused.

       11.    <u>Brokers</u>. Buyer and Liquidating Agent each represents to the other that it has not dealt with any broker, finder, or other agent in connection with this transaction. Each party hereby indemnifies and holds harmless the other party from all loss, cost and expense (including reasonable attorneys' fees) arising out of a breach of its representation or undertaking set forth in this Section. The provisions of this Section shall survive Closing or the termination of this Agreement.

       12.    <u>Miscellaneous.</u>

       12.1.    <u>Assignability</u>. Buyer may not assign or transfer all or any portion of its rights or obligations under this Agreement to any other individual, entity or other person without the consent thereto by Liquidating Agent.

       12.2.    <u>Governing Law; Bind and Inure</u>. This Agreement shall be subject to any orders that the Bankruptcy Court, in its sole discretion, may issue, and shall bind and inure to the benefit of the parties hereto and their respective heirs, successors, and permitted assigns.

       12.3.    <u>Recording</u>. This Agreement or any notice or memorandum hereof shall not be recorded in any public record, except filings with the Registro de la Propiedad Industrial España, this Bankruptcy Court, or another court of competent jurisdiction.

       12.4.    <u>Time of the Essence</u>. Time is of the essence of this Agreement.

       12.5.    <u>Headings</u>. The headings preceding the text of the paragraphs and subparagraphs hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

       12.6.    <u>Counterparts</u>. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

       12.7.    <u>Exhibits</u>. All Exhibits which are referred to herein and which are attached hereto or bound separately and initialed by the parties are expressly made and constitute a part of this Agreement.

       12.8.    <u>Survival</u>. All obligations and covenants of Liquidating Agent contained herein shall not survive Closing.

       12.9.    <u>Entire Agreement; Amendments</u>. This Agreement and the Exhibits hereto set forth all of the promises, covenants, agreements, conditions and undertakings between the parties hereto with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as contained herein. This Agreement may not be changed orally but only by an agreement in writing, duly executed by or on behalf of the party or parties against whom enforcement of any waiver, change, modification, consent or discharge is sought.

6



12.10.  Further Assurances. The parties agree to act in good faith and to properly and fully execute in a timely manner any and all documents necessary to carry out the terms and intent of this Agreement. The parties shall also, at all times in the future, upon the request of the other, execute and deliver to the other all additional and further assurances of any nature which may be reasonably necessary to fully consummate and carry out the term and intent of this Agreement. However, nothing contained in this Section 12.10 shall require either party to assume any liability or expense not expressly required by the terms of this Agreement. This Agreement shall be deemed to have been drafted by both parties and, in the event of a dispute, shall not be construed against either party as draftor.

12.11.  Performance on Saturdays, Sundays and Holidays. Whenever the date fixed for the payment of funds, the giving of notice, or the performance of any other provision of this Agreement falls on a Saturday, Sunday, legal holiday or any day on which banking institutions in the city of payment or performance are authorized by law to close, then such payment, notice or performance need not be made on such date, but shall be made on the next succeeding business day with the same force and effect as if made on the date fixed (and, as to payments, no additional interest shall accrue on such payment if payment is made on such next succeeding business day).

12.12.  Jurisdiction; Venue; Waiver of Jury Trial. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any matter arising from or relating to the sale of the Trademarks and the enforcement of any rights and remedies of Liquidating Agent or Buyer hereunder and Buyer hereby consents to such jurisdiction. The parties hereby waive all rights to a jury trial.

13.    Special Clauses.

13.1.  Conflicts with the Bankruptcy Court Order. In the event of any material conflict or inconsistency exists between the provisions of this Agreement and the Bankruptcy Court Order, the provisions of the Bankruptcy Court Order shall govern and control.

13.2.  Agreement Subject to Higher and Better Offers. Buyer and Liquidating Agent acknowledge and agree that this Agreement is subject to higher and better offers and approval of the Bankruptcy Court pursuant to such bidding procedures and orders of the Bankruptcy Court as the Liquidating Agent, in his sole and absolute discretion, may seek and obtain from the Bankruptcy Court.

[SIGNATURES APPEAR ON THE NEXT PAGE]



7

IN WITNESS WHEREOF, the parties have executed and delivered this Purchase and Sale Agreement as of the date first above written.

WITNESS/ATTEST:                    SELLER:


Joel I. Sher, Esquire
Liquidating Agent


BUYER:

HOTEL DE LA VILLA OLIMPICA, S.A.


Name: Javier Faus Santasusana
Title: Manager Director

8