IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                        *

**G. WARE TRAVELSTEAD,**           *        Case No. 96-5-4979-SD
                                              (Chapter 11)
         Debtor.                      *

* * * * * * * * * * * * *

### LIQUIDATING AGENT'S FIFTH INTERIM STATUS REPORT

Comes now Joel I. Sher, Liquidating Agent and files this Interim Status Report, stating:

### Introduction

On December 31, 1997, the Bankruptcy Court entered an Order Confirming the Debtor's Third Modified Fourth Amended Plan of Reorganization (the "Plan"). On December 31, 1997, the Court entered an Order appointing Joel I. Sher as the Liquidating Agent in conformity with the terms of the Plan. The Plan provides for the Liquidating Agent to file status reports indicating (i) the status of the disposition of assets to be liquidated under the Plan, (ii) any sale contracts entered into, the proposed contract sale price, the identity of the proposed purchaser, and (iii) the current condition of the assets to be liquidated. This report details activities for the period of April 1, 2006 through July 31, 2007 (the "Period").

### General Overview

The Liquidating Agent has undertaken various activities since his appointment in an effort to liquidate all known assets of the Debtor. Prior to the Period, the Liquidating Agent disposed of substantially all known direct assets of the Debtor. During the period the Liquidating Agent disposed of the last known valuable indirect interest of the Debtor, resulting in gross receipts during the Period of approximately $100,000.

**Disposition of Assets**

**1.      Artwork, Personal Items**

The Liquidating Agent continued to work with his art consultant, Susan Perrin, to liquidate at the highest price the remaining items of art and collectibles owned by the Debtor. During the Period, the Liquidating Agent received offers for the last two pieces of the Debtor's artwork. However, neither offer came to fruition. As a result, no artwork was sold during the Period. However, the Liquidating Agent will continue to work to dispose of these last two items. Due to the nature of this artwork and current market conditions, the Liquidating Agent expects these pieces will not bring substantial sums

**2.      Spanish Interests**

Through a review of documents accumulated by the Liquidating Agent and information gained from several trips to Spain, the Liquidating Agent determined that the Debtor had interests in over twenty different entities in Spain, most of which were owned through intermediary holding companies incorporated in Spain, the Netherlands and the United States.

During the Period, the Liquidating Agent marketed and sold all of the Debtor's indirect right, title and legal interest in certain trademarks owned two entities in which the Debtor had a direct and indirect ownership interest: The Travelstead Group, Inc. (the "Group") and Travelstead Barcelona Limited Partnership ("TBLP"). The Group was the owner of three (3) design trademarks, all registered with the Registro de la Propiedad Industrial España in Spain: (i) "Arts Barcelona" Serial Number 1.609.204; (ii) "Arts" Serial Number 1.609.205; and (iii) "Hotel Arts Barcelona" Serial Number 1.630.906 (collectively referred to herein as the "Trademarks").

In conjunction with the 1982 Olympics, the Debtor was selected to design and develop various commercial and retail establishments on the ocean front in Barcelona, Spain (the "Project"), including most notably the Hotel Arts (the "Hotel"), which to this day continues to be one of Europe's most prestigious resort properties.  In 1993, the Group, the Debtor, and TBLP entered into a License Agreement with T-S Barcelona Partners, L.P. ("Barcelona Partners") and USA Sogo, Inc. ("USA Sogo") (together with Barcelona Properties, the "Licensees"), majority owners of the Hotel de la Villa Olympica, S.A ("Hovisa"), a Spanish corporation which controls and owns the Hotel.  The License Agreement granted the Licensees a perpetual right to use the Trademarks, but only in conjunction with the Project. Hovisa advised the Liquidating Agent that it wished to use the Trademarks for other of its business interests.  Thereafter, the Liquidating Agent and Hovisa entered into negotiations with respect to the sale of the Trademarks.  Given the restrictive nature of the Trademarks and limited pool of interested purchasers, the Liquidating Agent believed that pursuing the sale to Hovisa was in the best interests of the estate.

The Liquidating Agent hired and consulted with Intellectual Property Management & Finance to value the Trademarks.  Thereafter the Liquidating Agent entered into an agreement to sell the Trademarks to Hovisa for the sum of $100,000, net of VAT or other similar taxes.  The Liquidating Agent filed the Motion of Liquidating Agent for Authority to Sell Interests in and Associated with Trademarks of the Travelstead Group, Inc. (the "Motion").   The Motion was approved by Order of the Court entered on June 16, 2006.  The Liquidating Agent was thereafter required to travel to Barcelona, Spain to appear personally before a notary in order to close upon the sale of the Trademarks.  On or about July 31, 2006, the Liquidating Agent received the sum of

$99,960.00 ($40.00 was deducted by the Liquidating Agent's bank for processing the transaction) in sale proceeds.

### 3.  Claims in Babbitt Ranches

During 2005, the Liquidating Agent discovered that the Debtor held membership interests in an entity known as Babbitt Ranches. In December 1993, without Court approval or the knowledge of the Trustee, the Debtor purported to pledge a portion of his interest in Babbitt Ranches as collateral security for a loan of approximately $281,000 from Larry J. West ("West"). Following litigation in various courts, the Liquidating Agent sold the Debtor's right, title and interests in Babbitt Ranches for the sum of $262,000., plus various other sums, raising the total consideration received from that transaction to approximately $310,000. The order approving the sale provided, in relevant part, that the "sale of the Ownership Interests shall be free and clear of all liens, claims, rights, encumbrances and interests of claimants of this estate, including but not limited to the claims of Larry J. West individually and as trustee of West Companies Defined Benefit Pension Plan & Trust..." and that "all liens, claims rights and encumbrances upon the Ownership Interests existing as of the date of the closing including but not limited to the claims of West, shall attach to the consideration paid to the Liquidating Agent."

On or about March 17, 2006, the Liquidating Agent filed a Complaint to Avoid Post-Petition Transfer and for Other Declaratory Relief against West in order to resolve his claims to the proceeds of sale. Immediately thereafter, the Liquidating Agent and West entered into a settlement agreement to resolve that adversary proceeding. That settlement agreement provided for West to receive the sum of $32,000, in consideration for which he released and discharged any further claims he had to proceeds of sale of the Debtor's interest in Babbitt Ranches. Thereafter

the Liquidating Agent filed the liquidating agent's Motion For Approval Of Settlement And Compromise Of Controversy With Larry J. West, Individually And As Trustee Of West Companies Defined Pension Plan & Trust (the "Settlement Motion"). Eduardo Canet, a creditor of the Debtor, attempted to file a response to the Settlement Motion. Thereafter the Court entered an order approving the Settlement Motion and on or about May 2, 2006, the Liquidating Agent paid Mr. West the sum of $32,000.

### 4.   Tax Matters

Upon the sale of the Debtor's interests in Blockless Investments, B.V. ("Blockless") in 1999 (*see* Liquidating Agent's First and Second Interim Reports), the Court directed the Liquidating Agent to escrow $500,000, representing the potential tax liability of the Debtor with respect to the disposition of the Blockless assets. Thereafter the Liquidating Agent filed a Motion Of Liquidating Agent To Determine And Pay The Debtor's Income Tax Obligations For 1999 (the "Tax Motion"). In the Tax Motion, the Liquidating Agent sought a determination that the Debtor's tax liability for 1999 was less then $100,000. The Internal Revenue Service ("IRS") objected to the Tax Motion and argued that the liability was in excess of that amount. The Liquidating Agent has allowed Debtor's counsel to prosecute the Tax Motion due to their familiarity with the matter. By agreement with the IRS, the parties have attempted to resolve the dispute consensually but, as of this date, the matter has not been resolved. As of March 31, 2007, the Liquidating Agent was holding $544,155.91 in a CD account, which renews every six months.[1]

---

[1] By prior order of the Court, certain sums were disbursed to the Debtor post-confirmation. Also, interest has accrued on the sums being held.

5.  **General Matters**

Attached hereto as Exhibit A is a reconciliation of the receipts and disbursements of the Liquidating Agent during the Period. As of the date of this report, the Liquidating Agent is holding the approximate sum of $63,000. In addition the Liquidating Agent is holding the tax escrow referred to above. As reflected on Exhibit A, the Liquidating Agent has also, from time to time, made payments for the expenses of the administration of this estate, including partial payments to various professionals for fees and expenses approved by orders of the Bankruptcy Court. These payments have been made on an allocable basis subject to the availability of funds. During the Period, professional fees paid totaled approximately $367,000, in addition to quarterly fees due to the United States Trustee.

/s/    Joel I. Sher
Joel Sher, Bar No. 00719

Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, MD  21201-3147
(410) 385-0202

*Liquidating Agent for G. Ware Travelstead*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of July, 2007, a copy of the Fifth Interim Status Report was served by (i) electronic transmission, and (ii) first-class, postage prepaid, on:

>Paul M. Nussbaum, Esquire
>Whiteford, Taylor & Preston, L.L.P.
>7 St. Paul Street, Suite 1400
>Baltimore, MD  21202-1626
>
>Mark A. Neal, Esquire
>Office of the U.S. Trustee
>101 West Lombard, Suite 2625
>Baltimore, MD  21201
>
>Edward McDermott, Esquire
>Pollack & Kaminsky
>114 W. 47th Street
>New York, NY  10036

/s/     Joel I. Sher
Joel I. Sher