## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| In re | * | |
| **G. WARE TRAVELSTEAD** | * | **Case No. 96-54979-DWK** |
| Debtor. | * | **(Chapter 11)** |

\*　\*　\*　\*　\*　\*　\*

| | |
|---|---|
| **EXTRA SPACE MANAGEMENT, INC.,** | * |
| Movant, | * |
| **v.** | * |
| **G. WARE TRAVELSTEAD** and | * |
| **JOEL I. SHER, LIQUIDATING AGENT,** | * |
| Respondents. | * |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (Storage Space and Personal Property Located Therein
### at 1699 Baltimore Annapolis Boulevard, Arnold, Maryland)

Extra Space Management, Inc., by its undersigned attorneys, hereby moves for relief from the automatic stay pursuant to 11 U.S.C. § 362(a) and Bankruptcy Rule 4001(a), and in support hereof, states as follows:

1.	This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 11 U.S.C. § 362(d).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).  Venue is proper pursuant to 28 U.S.C. § 1408(a).

## A.  The Bankruptcy Case

2.        On May 31, 1996 (the "Petition Date"), G. Ware Travelstead (the "Debtor") filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3.        On December 31, 1997, this Court confirmed the Debtor's Third Modified Fourth Amended Plan of Reorganization (the "Plan").  Also on December 31, 1997, this Court entered an Order (the "Order") appointing Joel I. Sher as the Liquidating Agent in conformity with the terms of the Plan.  Pursuant to the terms of the Plan and the Order, the Liquidating Agent has "the right and standing to pursue and defend any claims or rights of actions in respect to the property of the estate or of the debtor" (Order at 3) and has "all of the rights, duties, obligations, and powers of a trustee including, but not limited to, those set forth in § 704(1) and 1106 of the Bankruptcy Code."  Plan at Art. 6.5(a).  Since his appointment, the Liquidating Agent has sought to liquidate and administer assets for the benefit of creditors.  The assets that the Liquidating Agent has liquidated include not only assets owned directly by the Debtor but also those owned by those business entities in which the Debtor has a direct and/or indirect ownership, such as The Travelstead Group, Inc.

## B.  The Storage Space Rental Agreements

4.        Extra Space Management, Inc., successor-in-interest to Storage USA, Inc. ("Extra Space"), owns and operates a large number of personal property storage facilities throughout the country, including a facility located at 1699 Baltimore Annapolis Boulevard, Arnold, Maryland (the "Storage Location").

5.        Prior to the Petition Date, The Travelstead Group, Inc. ("Travelstead"), a business entity in which the Debtor has direct and/or indirect ownership, entered into an

#741781v.1

agreement with Storage USA, Inc. ("Storage") entitled Storage USA Rental Agreement dated November 2, 1992 (the "First Contract," a copy of which is attached hereto and incorporated herein as **Exhibit A**). Pursuant to the First Contract, Storage agreed to permit Travelstead to store personal property in a personal storage space unit referred to as Unit No. 16 (the "Storage Space") at the Storage Location. In exchange, the First Contract provided that Travelstead would make monthly payments to Storage in the initial amount of $230.00. The monthly payment was due on the first day of each month. Over time, this monthly fee increased to $478.00 and later $517.00. The First Contract is a month-to-month rental agreement, automatically renewed every month under certain conditions.

6.      Later, the First Contract was assigned by Storage to its successor-in-interest, *i.e.*, SUSA Partnership L.P. ("SUSA").

7.      Later, the Debtor and/or another business entity in which the Debtor has direct and/or indirect ownership, *i.e.*, Venture Concept ("Venture") entered into two agreements with SUSA entitled Storage USA Rental Agreement - State of Maryland dated August 1, 1995 and October 25, 1997 (the "Second and Third Contracts," copies of which are attached hereto and incorporated herein as **Exhibits B and C**). Pursuant to the Second and Third Contracts, SUSA agreed to permit the Debtor and Venture to store personal property in two personal storage space units referred to as Unit No. 352 (the "Second Storage Space") and Unit No. 59 (the "Third Storage Space") at the Storage Location. In exchange , the Second and Third Contracts provided that Venture would make monthly payments in the initial amount of $159.00 and $209.00 respectively. These rental payments were also due on the first day of each month. Over time, the

monthly fees increased to $309 and $325 for Unit No. 352, *i.e.*, the Second Storage Space and $358 and $376 for Unit No. 59, *i.e.*, the Third Storage Space.  The Second and Third Contracts were also month-to-month rental agreements, automatically renewed every month under certain conditions.

8.      Later, the First, Second and Third Contracts were assigned by SUSA to Extra Space Management, Inc. ("Extra Space"), the movant herein.  Accordingly, Extra Space is the current landlord for the Storage Location.

9.      In accordance with ¶ 11 of the First, Second and Third Contracts (collectively referred to hereafter as the "Contracts") and applicable statutory provisions, including the Maryland Self Storage Act, codified as MD Code Ann. Com. Law II §§ 18-501 through 18-506, Extra Space holds a lien on the personal property stored at the Storage Space to secure payment of monies owed under the Contracts.  In addition, ¶ 12 of the Contracts provides that upon default of the respective contract by the tenant, including non-payment of any amount owed under the contract, Extra Space has the right to terminate the contract and to sell and/or to dispose of any assets stored in the storage space.

10.     After the Liquidating Agent was appointed, the Liquidating Agent continued to use the storage space in Units Nos. 16, 352 and 59 at the Storage Location to store personal property.  Although the Liquidating Agent fell behind in paying the rental fees for these three units, he made a catch-up payment in May 2006 for all rent arrearages owed for the months of January through May 2006.

11.     Significantly, however, the Liquidating Agent has not paid any of the storage fees for all three units since July 1, 2006!  Accordingly, on March 15, 2007,

counsel for Extra Space sent to the Liquidating Agent's paralegal, *i.e.*, Ann Lawrence, a letter informing her of the Liquidating Agent's failure to pay the rent owed for the past nine months, *i.e.*, July, 2006 through March 2007.  *See* Letter, attached hereto as **Exhibit D**.  The total arrearages owed through March, 2007 were $10,597.00.  Thereafter, the Liquidating Agent still did not pay the outstanding arrearages.  Despite at least a half a dozen telephone calls to the Liquidating Agent and/or his paralegal *over the following six months plus an e-mail to the Liquidating Agent* regarding the need to pay these arrearages, and the Liquidating Agent's assurance that the fees would be paid current, the Liquidating Agent has not paid these arrearages.  In a conversation with Extra Space's counsel, the Liquidating Agent acknowledged that he was keeping files and documents in the storage units and that ultimately he needed to arrange for the removal of such paperwork from the storage units to halt the accrual of additional rental fees.

12.     Because the arrearages were not, in fact, paid, Extra Space's counsel sent a second letter to the Liquidating Agent on September 5, 2007, a copy of which is attached hereto as **Exhibit E**.  Pursuant to this letter, Extra Space maintained that if the arrearages were not paid within the next 10 days, then Extra Space would have no other choice but to file motions seeking relief from the automatic stay to obtain the removal of personal property from the Storage Location and seeking payment of these arrearages and any attorneys' fees incurred in collecting the arrearages.  *See* Exhibit E.

13.     Despite the September 5, 2007 letter, the Liquidating Agent has not paid the arrearages.

14.     The postpetition rent arrearages now total $20,268.00 (the "Arrearages") and includes rent for all three units from July 2006 through November 1, 2007.  A

breakdown of the Arrearages owed to Extra Space is set forth on **Exhibit F**, attached

hereto and incorporated herein.  In addition, Extra Space has incurred attorneys' fees in

seeking payment of the arrearages and in prosecuting this Motion.

      15.    Because Extra Space has not examined the contents of the units at the

Storage Space, it is unable to state with particularity whether its interest in the contents

therein is fully secured, undersecured, or oversecured, and therefore whether its interest is

adequately protected.  Because the value of personal property tends to diminish quickly,

Extra Space reasonably believes that its interest in the personal property stored therein is

not adequately protected.  Moreover, if the Liquidating Agent's statement is correct that

the only things stored in the three units are documents, then Extra Space is certainly

unsecured.

### C.  Argument

      16.    Cause exists under 11 U.S.C. § 362(d)(1) to grant Extra Space relief from

the automatic stay in order to enforce its lien on any personal property located in the

storage units because its interest in said property is not adequately protected.

      17.    Cause exists to lift the automatic stay to both terminate the contract and

allow Extra Space to enforce its lien on the personal property, including to dispose of

such personal property contained in the three storage units in accordance with applicable

non-bankruptcy law, because the Liquidating Agent has not made postpetition rent

payments to Extra Space for almost 1½ years!  The arrearages now total at least

$20,268.00 and Extra Space suffers continuing economic harm until the storage units can

be relet.

18.     Until the personal property has been removed from the storage units, Extra Space is unable to relet the space to a paying customer.  Therefore, until the storage units can be relet, Extra Space suffers a continuing loss.

WHEREFORE, for the foregoing reasons, Extra Space requests that this Honorable Court enter an Order:

(A)     Ordering the Liquidating Agent to remove the personal property stored in the three storage units within 10 days or alternatively, granting relief from the automatic stay to permit Extra Space to exercise any and all available remedies under the Contracts and applicable non-bankruptcy law including its right to enforce its lien on property stored in the Storage Space and to liquidate and/or to dispose of said property;

(B)     Granting relief from the automatic stay to permit Extra Space to terminate the Contract; and

(C)     Granting such other and further relief as this Court deems just and proper.

Date:  November  7, 2007

/s/ Mary Fran Ebersole
Mary Fran Ebersole, Bar No. 08729
 Tydings & Rosenberg LLP
 100 East Pratt Street, 26th Floor
 Baltimore, Maryland  21202
 (410) 752-9700
 mebersole@tydingslaw.com

*Attorneys for Movant, Extra Space Management, Inc.*

#741781v.1