**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

In re                                             *

**G. WARE TRAVELSTEAD**          *          **Case No. 96-54979-DWK
(Chapter 11)**

     **Debtor.**                              *

*        *        *        *        *        *        *        *        *        *        *        *

**APPLICATION FOR PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM**

Extra Space Management, Inc. ("Extra Space"), by its undersigned counsel, files

this Application for Payment of Administrative Expense Claim and in support, states as

follows:

**I.        FACTS**

**A.  The Bankruptcy Case**

1.        On May 31, 1996 (the "Petition Date"), G. Ware Travelstead (the

"Debtor") filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

2.        On December 31, 1997, this Court confirmed the Debtor's Third Modified

Fourth Amended Plan of Reorganization (the "Plan").  Also on December 31, 1997, this

Court entered an Order (the "Order") appointing Joel I. Sher as the Liquidating Agent in

conformity with the terms of the Plan.  Pursuant to the terms of the Plan and the Order,

the Liquidating Agent has "the right and standing to pursue and defend any claims or

rights of actions in respect to the property of the estate or of the debtor" (Order at 3) and

has "all of the rights, duties, obligations, and powers of a trustee including, but not

limited to, those set forth in § 704(1) and 1106 of the Bankruptcy Code."  Plan at Art.

6.5(a).  Since his appointment, the Liquidating Agent has sought to liquidate and

administer assets for the benefit of creditors.  The assets that the Liquidating Agent has liquidated include not only assets owned directly by the Debtor but also those owned by those business entities in which the Debtor has a direct and/or indirect ownership, such as The Travelstead Group, Inc.

### B. The Storage Space Rental Agreements

3.      Extra Space Management, Inc., successor-in-interest to Storage USA, Inc. ("Extra Space"), owns and operates a large number of personal property storage facilities throughout the country, including a facility located at 1699 Baltimore Annapolis Boulevard, Arnold, Maryland (the "Storage Location").

4.      Prior to the Petition Date, The Travelstead Group, Inc. ("Travelstead"), a business entity in which the Debtor has direct and/or indirect ownership, entered into an agreement with Storage USA, Inc. ("Storage") entitled Storage USA Rental Agreement dated November 2, 1992 (the "First Contract," a copy of which is attached hereto and incorporated herein as **Exhibit A**).  Pursuant to the First Contract, Storage agreed to permit Travelstead to store personal property in a personal storage space unit referred to as Unit No. 16 (the "Storage Space") at the Storage Location.  In exchange, the First Contract provided that Travelstead would make monthly payments to Storage in the initial amount of $230.00.  The monthly payment was due on the first day of each month. Over time, this monthly fee increased to $478.00 and later $517.00.  The First Contract is a month-to-month rental agreement, automatically renewed every month under certain conditions.

5.      Later, the First Contract was assigned by Storage to its successor-in-interest, *i.e.*, SUSA Partnership L.P. ("SUSA").

#742684v.1

6.      Later, the Debtor and/or another business entity in which the Debtor has direct and/or indirect ownership, *i.e.*, Venture Concept ("Venture") entered into two agreements with SUSA entitled Storage USA Rental Agreement - State of Maryland dated August 1, 1995 and October 25, 1997 (the "Second and Third Contracts," copies of which are attached hereto and incorporated herein as **Exhibits B and C**).  Pursuant to the Second and Third Contracts, SUSA agreed to permit the Debtor and Venture to store personal property in two personal storage space units referred to as Unit No. 352 (the "Second Storage Space") and Unit No. 59 (the "Third Storage Space") at the Storage Location.  In exchange , the Second and Third Contracts provided that Venture would make monthly payments in the initial amount of $159.00 and $209.00 respectively. These rental payments were also due on the first day of each month.  Over time, the monthly fees increased to $309 and $325 for Unit No. 352, *i.e.*, the Second Storage Space and $358 and $376 for Unit No. 59, *i.e.*, the Third Storage Space.  The Second and Third Contracts were also month-to-month rental agreements, automatically renewed every month under certain conditions.

7.      Later, the First, Second and Third Contracts (collectively, the "Contracts") were assigned by SUSA to Extra Space Management, Inc. ("Extra Space"), the movant herein.  Accordingly, Extra Space is the current landlord for the Storage Location.

8.      After the Liquidating Agent was appointed, the Liquidating Agent continued to use the storage space in Units Nos. 16, 352 and 59 at the Storage Location to store personal property.  Although the Liquidating Agent fell behind in paying the rental fees for these three units, he made a catch-up payment in May 2006 for all rent arrearages owed for the months of January through May 2006.

9.      Significantly, however, the Liquidating Agent has not paid any of the storage fees for all three units since July 1, 2006!  Accordingly, on March 15, 2007, counsel for Extra Space sent to the Liquidating Agent's paralegal, *i.e.*, Ann Lawrence, a letter informing her of the Liquidating Agent's failure to pay the rent owed for the past nine months, *i.e.*, July, 2006 through March 2007.  *See* Letter, attached hereto as **Exhibit D**.  The total arrearages owed through March, 2007 were $10,597.00.  Thereafter, the Liquidating Agent still did not pay the outstanding arrearages.  Despite at least a half a dozen telephone calls to the Liquidating Agent and/or his paralegal *over the following six months plus an e-mail to the Liquidating Agent* regarding the need to pay these arrearages, and the Liquidating Agent's assurance that the fees would be paid current, the Liquidating Agent has not paid these arrearages.  In a conversation with Extra Space's counsel, the Liquidating Agent acknowledged that he was keeping files and documents in the storage units and that ultimately he needed to arrange for the removal of such paperwork from the storage units to halt the accrual of additional rental fees.

10.      Because the arrearages were not, in fact, paid, Extra Space's counsel sent a second letter to the Liquidating Agent on September 5, 2007, a copy of which is attached hereto as **Exhibit E**.  Pursuant to this letter, Extra Space maintained that if the arrearages were not paid within the next 10 days, then Extra Space would have no other choice but to file motions seeking relief from the automatic stay to obtain the removal of personal property from the Storage Location and seeking payment of these arrearages and any attorneys' fees incurred in collecting the arrearages.  *See* Exhibit E.

11.      Despite the September 5, 2007 letter, the Liquidating Agent has not paid the arrearages.

12.     Pursuant to ¶ 31 of the Contracts, Extra Space is entitled to receive payment of all reasonable attorneys' fees and costs it incurred in collecting the rent owed under the Contracts and/or in enforcing its rights under the Contracts.

13.     The postpetition rent arrearages now total $20,268.00 (the "Arrearages") and includes rent for all three units from July 2006 through November 1, 2007.  A breakdown of the Arrearages owed to Extra Space is set forth on **Exhibit F**, attached hereto and incorporated herein.  In addition, Extra Space has incurred attorneys' fees and costs in seeking payment of the Arrearages and in prosecuting this Motion and a motion for relief from automatic stay in the amount of $2,804.00.

## II.     ARGUMENT

### A.     Liquidating Agent Should Be Required to Immediately Pay Extra Space the Post-Petition Rent as An Administrative Expense

14.     After the Petition Date, the Liquidating Agent failed to pay Extra Space the Arrearages owed under the Contracts.  Significantly, however, the Liquidating Agent was and is required by § 365(d)(3) *timely* pay this post-petition rent.  Section 365(d)(3) provides:

> [t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

Generally, the rule is that the effective date of rejection, and the date through which administrative rent must be paid, is the date of entry of the order authorizing such rejection, assuming that the debtor has previously vacated the premises.  *See Norritech v. Geonex Corporation*, 204 B.R. 684, 691 (D. Md. 1997), *aff'd* 120 F.3d 260, 261 (4th Cir.

1997) (landlord entitled to administrative rent from the petition date to date court approved rejection of lease); *Towers v. Chikering & Gregory (In re Pacific-Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir. 1994) (holding that landlord was entitled to full contract rate of rent from order for relief through rejection of lease); *Geonex Corp. v. Vernon Graphics, Inc.*, 258 B.R. 336 (Bankr. D. Md. 2001) (trustee required to pay landlord rent under an unexpired lease from petition date through date court approved rejection of lease).

15.    Moreover, applicable case law and the legislative history for § 365(d)(3) make abundantly clear that the amount of rent required to be paid by a debtor is the contract rate of rent specified in the lease. *See In re Pacific-Atlantic Trading Co.*, 27 F.3d 401 (9th Cir. 1994); *Norritech v. Geonex Corp.*, 204 B.R. 684 (D. Md. 1997) (no requirement that landlord demonstrate a benefit to the estate), *aff'd* 120 F.3d 260, 261 (4th Cir. 1997); *In re Geonex Corp.*, 258 B.R. 336 (Bankr. D. Md. 2001) (landlord's rent claim is based on contract rate of rent and <u>not</u> upon any theory of benefit to the estate; thus landlord entitled to full rent even if debtor did not occupy the leased premises during the post-petition, pre-rejection period).

16.    The Liquidating Agent's failure to timely pay the Arrearages to Extra Space is a violation of § 365(d)(3).  This result should be rectified immediately.  The Liquidating Agent has had the benefit and use of the three storage units for almost a year and a half.  Despite past payment of the rent for these three storage units and an oral assurance by the Liquidating Agent that the Arrearages would be paid, they have not been paid and now the Arrearages total $20,268.00.  Extra Space has been substantially prejudiced in that it has not been paid by the Liquidating Agent for almost a year and a

half and has now had to incur legal fees to obtain payment of the Arrearages.  Extra

Space should not be made to suffer any further economic harm.  The non-payment of

these Arrearages is especially inequitable in light of the fact that the Liquidating Agent

and his law firm have sought and obtained approval to pay their own fees.  The

Liquidating Agent should be required to immediately pay Extra Space the Arrearages

through the date that the Liquidating Agent fully vacates the three storage units and

removes all personal property stored therein.

17.    In addition to the Arrearages, Extra Space seeks, as an administrative

priority, payment of its attorneys' fees incurred in collecting the Arrearages (the

"Attorneys' Fees"), as permitted under Section 31 of the Contracts.  *See In re Geonex*,

258 B.R. 336, 340-341, 342-343 (Bankr. D. Md. 2001) (landlord entitled to counsel fees

incurred in enforcing its right to payment of rent); *see also In re Thinking Machines

Corp.*, 67 F.3d 1021, 1023, 1029 (1st Cir. 1995) (reversing district court's decision which

reversed bankruptcy court decision which had, in part, required payment of rent plus

accrued interest).  Attorneys' fees have been routinely allowed in this jurisdiction based

on the reasoning in *In re Geonex* where a landlord is left with no alternative but to hire

counsel to enforce its rights to collect payment of rent.

WHEREFORE, Extra Space respectfully requests that this Court

(i)    order the Liquidating Agent to pay Extra Space within 10 days of

entry of an Order granting this Application pursuant to § 365(d)(3), the Arrearages,

Attorneys' Fees and any additional attorneys' fees incurred after the filing of this

Application in prosecuting Extra Space's rights under the Contracts; and

7

#742684v.1

(ii)    grant such other relief as is just and equitable.

Date:  November  7, 2007

/s/ Mary Fran Ebersole

Mary Fran Ebersole, Bar No. 08729
 Tydings & Rosenberg LLP
 100 East Pratt Street, 26th Floor
 Baltimore, Maryland  21202
 (410) 752-9700
 mebersole@tydingslaw.com

*Attorneys for Movant, Extra Space
Management, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of November, 2007, a copy of the

Application for Payment of Administrative Expense Claim was served electronically or by

first-class mail, postage prepaid, on:

Joel I. Sher, Esquire
Richard Goldberg, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street, 20th Floor
Baltimore, MD  21201

Javier Faus Santasusana, Esquire
Edificio "Blue Building" Av. Litoral Mar, 12-14, 1°
08005, Barcelona, Spain

Edward T. McDermott, Esquire
Pollack & Kaminsky
114 West 47th Street, 19th Floor
New York, NY  10036

Paul M. Nussbaum, Esquire
Stephen F. Fruin, Esquire
Whiteford, Taylor & Preston
7 Saint Paul Street
Baltimore, MD  21202-1626

Mark A. Neal, Esquire
Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201

Benjamin Rosenberg, Esquire
Rosenberg Martin Greenberg LLP
2115 Allfirst Building
25 South Charles Street
Baltimore, MD  21201

G. Ware Travelstead
1709 Dey Cove Drive
Virginia Beach, VA  23454

Cameron MacDonald, Esquire
Whiteford Taylor & Preston L.L.P.
Seven Saint Paul Street, Suite 1400
Baltimore, MD  21202

/s/ Mary Fran Ebersole
Mary Fran Ebersole

#742684v.1